THOMAS, J.,
for the Court:
¶ 1. The Chancery Court of Marion County, Mississippi awarded judgment against Kenneth Ray Bardwell in favor of Citizens Bank in the amount of $43,000. On appeal Bardwell argues
I. THE CIRCUIT COURT ERRED IN TRANSFERRING THIS CASE TO THE CHANCERY COURT, DENYING BARDWELL OF HIS RIGHT TO A TRIAL BY JURY.
II. THE CHANCELLOR ERRED IN FAILING TO DISMISS CITIZENS’ COMPLAINT FOR ITS FAILURE TO PROVE DAMAGES.
III. THE STATUTE OF FRAUDS BARS CITIZENS’ CLAIM AGAINST BARDWELL.
IV. THE CHANCELLOR ERRED IN NOT DISMISSING THE COMPLAINT UNDER THE EQUITABLE DOCTRINE OF CLEAN HANDS.’ ,
V.THE LOWER COURT ERRED IN DISMISSING BARDWELL’S COUNTER COMPLAINT.
¶ 2. Finding no error, we affirm.
FACTS
¶ 8. Johnson and Bardwell were involved in several joint ventures under which they would purchase timber, sell the timber to various mills, and after deduction of expenses, split the- profits on a fifty-fifty basis. Bardwell was primarily responsible for finding timber to purchase and Johnson was primarily responsible for financing. Supervision of the cutting, hiring of loggers, and other details were split between the two parties.
114. In late ÑoVember 1994, Bardwell found a tract of timber on 95.76 acres in Pike County, Mississippi. On December 20, 1994, Johnson and Bardwell purchased this real property. They executed a purchase money deed of trust to Citizens Bank in the amount of $192,530. Citizens Bank did not require Bardwell to execute a promissory - note to secure the deed of trust. ...
¶ 5. The parties entered into a joint venture to harvest the merchantable timber and sell the cut over land. Logging operations began in late December 1994, at the direction of Johnson. Johnson managed the timber harvesting operation to include complete control over the logging efforts, transport to various mills, and arranging for and receiving all funds from the sale of the' timber. No precise records or accounting was kept by Johnson of the logging operation as to the amounts of timber harvested or funds received, and none was formally requested by Bardwell in the litigation.
¶ 6. Johnson’s testimony was that between $145,000 and $148,000 was received for the sale of the timber. No evidence was presented of the stumpage from the cutover lands to determine exact amounts *780 of the timber removed, although Bardwell testified he was told by Johnson that $225,000 was received for the timber cut. From the funds received, $85,000 was spent on the logging operation, $25,817.80 was paid to Bardwell to purchase a new truck, and $9,300 was advanced to Bard-well. Further, $75,000 was paid to Citizens Bank to be applied to the land purchase obligation.
¶ 7. In late February of 1995, the timber harvest was completed and a sale of a portion of the Pike County property was arranged. John H. White, Jr. was the attorney who prepared the documents and was to close the sale. White obtained a cancellation of the deed of trust from Citizens Bank dated February 21, 1995. White filed a cancellation of the deed on March 2, 1995. A dispute arose between the new buyer and Johnson, and the sale was canceled. Bardwell testified that he was unaware that the sale had not gone through.
¶ 8. Citizens Bank had no knowledge that the cancellation of the deed of trust had been recorded. On June 6, 1996; Bardwell went to Citizens Bank and was informed that the indebtedness remained outstanding. Citizens Bank informed Bardwell for the first time that he was not listed as a borrower on the note. Citizens Bank informed Bardwell that $118,000 remained outstanding. Bardwell then traveled to Pike County and discovered that the deed of trust had been canceled. Bardwell arranged for the sale of his undivided one-half interest for the sum of $43,000 and conveyed his interest on August 25,1995.
¶ 9. Thereafter, pursuant to a partition suit in the Chancery Court of Pike County, the acreage was sold by special master realizing $125,000, of which $61,960.40 was credited to Johnson’s undivided interest and paid toward the promissory note at the bank, with Bardwell’s successor in title receiving the balance after expense of the sale. The bank now shows a principal balance due on the note of $56,766.16 plus accrued interest of $13,217.45 with total due of $69,983.61.
¶ 10. Following Bardwell’s sale of his undivided interest in the acreage, the Bank froze funds on hand in Bardwell’s account of $7,500, giving rise to his counter-claim for conversion, seeking actual and punitive damages.
¶ 11.' Before the trial in this matter, John H. White Jr. appeared at trial and an announcement was made of a settlement of claims against him on behalf of Citizens Bank which was entered into the record. The chancellor below in the judgment of the court summarized well the facts and law as he found them in this case.
¶ 12. The original complaint by Johnson and the bank sought from Bardwell an amount equal to the fair market value of his interest in the acreage, or the consideration he received for the sale of his interest and attorney’s fees. The pleadings did not seek an accounting between Johnson and Bardwell in their joint venture or partnership establishing for the logging operation on the 95.72 acres in Pike County-
¶ 13. The issues before the court were whether Bardwell was indebted to the bank for the funds realized from the sale of his undivided portion of the acreage, or whether the bank wrongfully converted Bardwell’s funds by its action of freezing his funds on hand.
¶ 14. The court found that Johnson and Bardwell had a joint venture limited to the logging operation of the 95.72 acres only, distinguished from a general partnership. Consequently, the apparent scope of Johnson’s authority as a partner extended to making the loan for the land purchase, supervising the logging operation, and making payment of the proceeds. Bard-well would be equally liable for Johnson’s actions in the venture, notwithstanding his being omitted from the execution of the promissory note. The bank, however, did not seek repayment of the amount due on the promissory note from Bardwell, only *781 the value of the acreage sold by him unilaterally.
¶ 15. While Johnson was the maker of the promissory note to the bank, Bardwell participated as necessary in the execution of the deed of trust to give the bank a complete security interest in the acreage until its value was attributed toward the obligation to the bank.. The court felt the perplexing question presented was what effect the premature cancellation of the deed of trust had on Bardwell’s legal obligation to Citizens Bank. Clearly, Bardwell knew of the creation of the deed of trust by his execution, as well as the intended transfer of the acreage, as evidenced by his execution of the warranty deed. Stated differently, could he later transfer for profit his interest in the acreage when he had previously participated in an arrangement to sell the entire acreage to satisfy the obligation to Citizens Bank with knowledge his interest in the real property was encumbered?
¶ 16. The court found that the premature cancellation of the deed of trust was notice to a third party for value, Bardwell’s successor in title, but the court found it did not serve as notice to Bardwell that the effects of the lien were extinguished since he was a direct party to the transaction creating the lien and had intended to give Citizens Bank a lien on property in the first instance and then executed a warranty deed conveying his interest thereby intending to divest himself of ownership of the property in conjunction with the cancellation of the deed of trust. The court found that Bardwell could not claim the benefits of owning the property at the sale of his undivided interest without account-' ing to Citizens Bank for his prior legal actions encumbering the property. Good faith and fair dealing required no 'less. The deed of trust canceled by mistake could have been reinstated by proper action, subject to the ramification of intervening interests of innocent third parties.
¶ 17. The chancellor found that Bardwell was not an innocent third party without notice and . his acts in seeking out the status of the promissory note at Citizens Bank and determining the status of the title to the real property were sufficient to, in effect, signify his understanding of the transaction and his interest in securing the loan from Citizens Bank in the purchase of the real property for the joint venture. He was an interested and necessary party to the deed of trust and the lien created thereby. The court found that he had no right to profit from the apparent cancellation of the deed of trust, based on his prior acts and the liabilities created by the joint venture. He .benefitted from the loan made by the bank, understood its ramifications, and attempted to retain the value of his undivided interest of the real property. The equitable doctrine of unjust enrichment should apply to require restitution to Citizens Bank.
¶ 18. The chancellor awarded Citizens Bank a judgment against Bardwell for the value of the undivided interest in the acreage unilaterally sold by him,’ shown to be $43,000 to include the $7,500 on hand in the bank, plus interest at the rate of eight percent per annum until paid. The claims of Bardwell against Citizens Bank were dismissed.
¶ 19. The amounts received by Johnson and Bardwell for the sale of the timber were not determined by the litigation, as no party.sought an accounting of the joint venture. The-chancellor found the parties each had a part in the error which resulted in the' litigation and each should bear his or its own attomeys’s fees.
ANALYSIS
1.,
THE CIRCUIT COURT ERRED IN TRANSFERRING THIS CASE TO THE CHANCERY COURT, DENYING BARDWELL OF HIS RIGHT TO A TRIAL BY JURY.
¶ 20. Bardwell claims that the chancery court lacked subject matter jurisdiction to proceed in this matter because the duty of good faith is contractual in nature, *782 a subject matter which traditionally falls within the jurisdiction of the circuit court and is to be tried before a jury. He asserts that the only allegation against him were that he had breached obligations arising under contract, and that contractual matters are traditionally matters to be tried before a jury. Citizens Bank argues that a number of issues- between the parties are primarily equitable issues, which would require multiple bifurcations in order to grant whole relief. Further, Citizens Bank asserts that the Mississippi Constitution and statutory law* bar Bard-well from raising this issue for the first time on appeal.
¶ 21. The Mississippi Constitution provides:
No judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common-law jurisdiction....
Miss. Const, art. 6, § 147. Mississippi Code Annotated § 11-3-9 (Rev.1991) provides that “A judgment or decree in any chancery or circuit court rendered in a civil case, shall not be reversed or annulled on account of want of jurisdiction to render the judgment or decree.”
¶ 22. The Mississippi Constitution prohibits a party from gaining reversal on this jurisdictional issue following a trial on the merit. Southern Leisure Homes, Inc. v. Hardin, 742 So.2d 1088 (¶ 8) (Miss.1999). The correct procedure is to file an interlocutory appeal before a trial on the merits. Id. As Bardwell did not assert error before his trial on the merits, he is barred to raise this issue on appeal.
II.
THE CHANCELLOR ERRED IN FAILING TO DISMISS CITIZENS’ COMPLAINT FOR ITS FAILURE TO PROVE DAMAGES.
¶ 23. Bardwell argues that Citizens Bank’s complaint should have been dismissed for failure to allege damages. Bardwell states that the bank had not received a complete payoff of the loan, the bank had renewed and extended Johnson’s note on several occasions and had never made a demand for payment due on the remaining balance. As the bank never made demand for payment on the note, the loss of security caused Citizens Bank no damage.
¶ 24. Citizens counters that it sought damages in its complaint as a result of Bardwell’s breach of duty of good faith and fair dealing pursuant to the terms of the deed of trust. Citizens Bank sought a judgment equal to the value of the acreage sold unilaterally by Bardwell or in the alternative the fair market value of the interest of Bardwell. Citizens Bank argues that Bardwell is attempting to make this action an issue of liability pursuant to the promissory note, and not the true issue of liability pursuant to the deed of trust.
¶ 25. A reading of the original complaint clearly shows that Citizens Bank alleged damages. The complaint reads, “The conduct of Defendant, Kenneth Ray Bardwell, in selling his interest in the property without payment unto Plaintiff, Citizens, and without prior notification to Plaintiff, Jerry Johnson, constitutes a breach of the implied covenant of good faith arid fair dealing, for which Plaintiffs are entitled to reeovér damages.” The complaint further states that “Plaintiffs have been damaged and are entitled to recover ... the damages sustained by Plaintiffs, which is the fair market value of Defendant, Kenneth Ray Bardwell’s undivided one-half (½) -interest in said real property, or the consideration received by Defendant, Kenneth Ray Bardwell, whichever is greater.”
¶26. Bardwell goes into great detail of how Citizens Bank did not demand payment from Johnson, did not declare Johnson’s loan in default, has renewed Johnson’s note, and did not prove at trial that *783 Johnson did not receive more than enough money to pay the note. ' This was not the issue before the lower court, and is not the issue here. Citizens Bank’s proceeding in the lower court was an action of liability pursuant to the deed of trust, not pursuant to the promissory note executed by Johnson. The terms on the deed of trust were that Bardwell was to convey his interest in the property to Citizens Bank to secure payment of any indebtedness. The deed of trust specifically states, “If all or any part of the Property, or an interest therein, is sold or transferred by Debtor, ... Secured Party may declare all of the indebtedness to be immediately due and payable.”
¶ 27. Citizens Bank proved in the lower court that Bardwell’s sale of his undivided interest, with full knowledge that the indebtedness secured by the deed of trust had not been paid, resulted in the undisputed loss of Bardwell’s interest as collateral securing payment of the indebtedness. The chancellor properly ruled that the damage to Citizens Bank was the loss of the property as collateral securing the indebtedness.
III.
THE STATUTE OF FRAUDS BARS CITIZENS’ CLAIM AGAINST BARDWELL.
¶ 28. Bardwell argues that Citizens had no written or oral agreement where he agreed to be indebted to them. He states that the only writing signed by him was the deed of trust which makes no promise to pay, but simply offers the real property as security for Johnson’s promise to pay the note by December 20, or until such time as it is canceled. He states that the note was paid off by Johnson’s renewal note on June 14, 1995, extinguishing his obligation prior to the sale of his portion of the property.
¶ 29. Citizens argues that the statute of frauds does not apply to this action in that the chancellor found Bardwell responsible to Citizens under the terms and provisions of the deed of trust.
¶ 30. Again there is an obvious misunderstanding by Bardwell on what the cause of action was in the court below. Citizens Bank was proceeding against him under the deed of trust not the promissory note. Bardwell signed the deed of trust, and the terms on the deed of trust were the Bardwell was to convey his interest in the property to Citizens Bank to secure payment of any indebtedness.
IV.
THE CHANCELLOR ERRED IN NOT DISMISSING THE COMPLAINT UNDER THE EQUITABLE DOCTRINE OF CLEAN HANDS.
¶31. Bardwell asserts that the court erred in failing to dismiss the bank’s complaint against him for failing to come to court with clean hands.
¶32. The doctrine of clean hands was not brought before the chancery court. We “should undertake consideration of no matter which has not first been presented to and decided by the trial court.” Barnes v. Singing River Hosp. Sys., 733 So.2d 199 (¶ 9) (Miss.1999) (quoting Educational Placement Servs. v. Wilson, 487 So.2d 1316, 1320 (Miss.1986)). We will not find the lower court in error on a matter not presented for a decision. Bender v. North Meridian Mobile Home Park, 636 So.2d 385, 389 (Miss.1994). Notwithstanding this procedural bar, we find the doctrine of clean hands is inapplicable in this cause.
¶ 33. “The clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue.” Bailey v. Bailey, 724 So.2d 335 (¶ 7) (Miss.1998) (citing Calcote v. Calcote, 583 So.2d 197, 199-200 (Miss.1991)). “The meaning of this maxim is to declare that ‘no person as a complaining party can have the aid of a court of equity when his conduct with respect to the transaction in question has been characterized by wilful *784 inequity....’” O’Neill v. O’Neill, 551 So.2d 228, 233 (Miss.1989) (quoting V.A. Griffith, Mississippi Chancery Practice, § 42 (2d ed.1950)).
¶ 34. The clean hands doctrine bars relief to those guilty of improper, uncon-scientious, or unjust conduct in the matter as to which they seek equity. Bardwell asserts that Citizens Bank did not come to court with clean hands because it originally refused to place him on the promissory note, this conduct motivated by ill will towards him, and by suing him instead of Johnson and asking Johnson for accounts for the proceeds of the timber sold.
¶ 35. At this point we must reiterate, not to be repetitive but to be as deliberate as we can, the issue before the lower court and before this Court was never one of the proceeds of the timber, but rather, whether Bardwell was indebted to Citizens Bank for the funds realized from the sale of his undivided portion of the acreage pursuant to the deed of trust, or whether Citizens Bank wrongfully converted Bard-well’s funds by its action in freezing the funds in Bardwell’s account. Citizens Bank sought to recover as damages the value of Bardwell’s interest in the Pike County real estate, no more. The determination of the amounts received by Johnson and Bardwell for the sale of timber was not decided, and not before the chancery court, as neither party sought an accounting on the joint venture.
¶ 36. Citizens Bank was not seeking to take advantage of the equitable court of its own wrongful conduct. The doctrine of clean hands is inapplicable here.
V.
THE LOWER COURT ERRED IN DISMISSING BARDWELL’S COUNTER COMPLAINT.
¶ 37. In his last issue, Bardwell asserts that the chancellor committed error in failing to find that Citizens converted the $7,500 of his funds. He argues that Citizens intentionally and knowingly converted his funds by placing a hold on his account and denying him access to use of those funds. Instead of relying on proper legal remedies, the bank simply resorted to self-help by stealing his funds.
¶ 38. The chancery court was correct in finding that Bardwell could not claim the benefits of owning the property at the sale of his undivided one-half interest without accounting to Citizens Bank for his prior legal actions encumbering the property through the deed of trust. Bardwell testified that he sought out the status of the title and amount owing Citizens Bank before he sold his interest in the property. He also testified that the $7,500 in funds held by Citizens Bank were in fact proceeds of the sale of his interest in the Pike County property. Bardwell was not an innocent third party without notice. Citizens Bank was rightfully entitled to the funds, and the chancery court did not commit manifest error in dismissing Bard-well’s counter-complaint.
¶ 39. THE JUDGMENT OF THE MARION COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED, ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR. SOUTHWICK, P.J., NOT PARTICIPATING.