# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01590-COA

**ALCATEC LLC AND ROSEMARY BARBOUR**          **APPELLANTS**

**v.**

**THE JONES GROUP OF MISSISSIPPI LLC AND**          **APPELLEES**
**GENNIE LACY JONES**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/10/2018 |
| TRIAL JUDGE: | HON. JOSEPH ANTHONY SCLAFANI |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | MICHAEL A. HEILMAN |
| | JOHN WILLIAM NISBETT |
| | EDWARD TAYLOR POLK |
| | DANIEL J. HAMMETT |
| ATTORNEYS FOR APPELLEES: | JAMES D. BELL |
| | JAY MARSHALL ATKINS |
| | CANDICE CAROL HARGETT |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 05/26/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., McDONALD AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Alcatec LLC and Rosemary Barbour (collectively, Alcatec) filed a complaint against The Jones Group of Mississippi LLC, Gennie Lacy Jones, and Mainstream Software Inc.[1] (collectively, The Jones Group) seeking to recover damages stemming from Alcatec's contract with the United States Government. The Jones Group filed a motion for summary

---

[1] Mainstream Software Inc. was eventually dismissed as a defendant and is not a party to this appeal.

judgment, which the circuit court granted.

¶2.     Alcatec now appeals, asserting the following assignments of error: (1) the circuit court abused its discretion in allowing The Jones Group to amend its answer and include the affirmative defense of collateral estoppel; and (2) the circuit court erred in granting The Jones Group's motion for summary judgment after finding that Alcatec's claim was barred by collateral estoppel and the "doctrine of superseding intervening cause."

¶3.     After our review, we find that the circuit court abused its discretion in allowing The Jones Group to amend its answer and include the affirmative defense of collateral estoppel. We therefore reverse the circuit court's order granting summary judgment in favor of The Jones Group and we remand this case for further proceedings consistent with this opinion.

**FACTS**

¶4.     Rosemary Barbour is the sole owner and managing member of Alcatec. After Hurricane Katrina, the Department of Homeland Security and the Federal Emergency Management Agency (FEMA) contracted with Alcatec to maintain temporary housing units throughout the region impacted by Hurricane Katrina. The contract required Alcatec to coordinate the delivery, setup, maintenance, and disconnection of temporary housing units. Per the terms of the contract, Alcatec was required to perform monthly inspections referred to as preventative maintenance inspections (PMIs) on the housing units, perform maintenance on the housing units, respond to emergency calls, and deactivate the housing units when they were taken out of service. Alcatec was also required to use detailed service protocols, including methods to document and order the setup, maintenance, inspection, and

2

disconnection of the housing units.

¶5.    Alcatec contracted with The Jones Group to assist with the contract and to handle technology and database issues. The Jones Group was tasked with operating a "call center" to receive all work orders for routine or emergency maintenance requests, as well as requests for deactivations of housing units. Alcatec also requested that The Jones Group identify a computer software program to track the life cycle of the PMI work orders. According to Alcatec, The Jones Group recommended CrossForms software by Mainstream Software Inc. Alcatec accordingly purchased the software. Gennie Jones, the owner of The Jones Group, testified during her deposition that The Jones Group was responsible for inputting all of the FEMA trailers into the CrossForms system.

¶6.    Alcatec alleged that The Jones Group committed numerous errors in keeping track of the PMIs and work orders. Alcatec claimed that these errors led to duplicate entries being made into CrossForms and resulted in FEMA being double billed for duplicate inspections. Gennie Jones tendered The Jones Group's ninety-day notice of resignation to Alcatec in January 2007. On January 29 or 30, 2017, Alcatec terminated its relationship with The Jones Group.

¶7.    On February 8, 2008, Alcatec filed a complaint against FEMA alleging breach of contract and seeking payment of $3,846,471.69 for services rendered under the contract that were unrelated to the monthly PMIs. FEMA then filed a counterclaim against Alcatec alleging fraudulent billing practices.

¶8.    In an order entered on August 24, 2011, the United States Court of Federal Claims

3

ruled in favor of FEMA. *Alcatec LLC v. United States*, 100 Fed. Cl. 502 (2011). Relevant to the matter before us, the federal court observed that in November 2006, the number of completed PMIs decreased dramatically. *Id*. at 510. Barbour claimed that The Jones Group must have lost the PMI checklists, but Jones asserted that The Jones Group had not lost the checklists. *Id*. at 510-11. The federal court found that after Alcatec fell behind in performing the required monthly PMIs, Barbour then adopted a new system for completing PMIs and a "chaotic billing scheme that made it difficult for FEMA to detect inaccuracies in Alcatec's billing." *Id*. at 518. The federal court acknowledged that Jones, "who was initially charged with 'tracking the life cycle of a particular work order,' . . . testified that one of the reasons that [T]he Jones Group terminated its contract with Alcatec was that she was not comfortable with this new tracking process[.]" *Id*. The federal court determined that Alcatec's new system "was not in conformance with the terms of the contract, which called for monthly PMIs, . . . but Alcatec continued the practice throughout the course of the contract[.]" *Id*.

¶9. The federal court ultimately determined that Alcatec knowingly submitted fraudulent claims with the specific intent to deceive FEMA. *Id*. at 521, 529. The federal court explained that

> the evidence shows Ms. Barbour actually was aware of irregularities in Alcatec's invoices and general practices. She was the one who instituted the out-of-month billing procedure. She also was the person who refused at first to send FEMA a Microsoft or Excel copy of her invoices so that FEMA could more easily review her invoices for duplications, an act in violation of Alcatec's contract, and who faxed lengthy backup documentation to FEMA in the middle of the night without warning[.]

4

*Id*. at 523 (citations omitted). The federal court further determined that "Barbour was the primary contact for the Jones Group regarding invoicing . . . [and that she] was directly involved in what Ms. Jones considered a discrepancy in the number of PMIs that the Jones Group reported as complete and the number they received 'on the spreadsheet from Ms. Barbour.'" *Id*. at 523-24. As a result, the federal court held that Alcatec forfeited the unpaid balance of $3.8 million under the contract and assessed Alcatec with $77,000 in penalties and $275,050 in damages. *Id*. at 529. The United States Court of Appeals for the Federal Circuit affirmed this decision on July 11, 2012. *Alcatec LLC v. United States*, 471 F. App'x 899, 900 (Fed. Cir. 2012) (per curiam).

¶10. On August 7, 2014, Alcatec filed a complaint in the Rankin County Circuit Court against The Jones Group seeking to recover "all lost income and lost benefits under the FEMA Contract," the "penalties assessed by the Government," loss of earning capacity as a result of being barred from future business with the Government, as well as emotional distress damages and punitive damages. Alcatec claimed that the "damages were the result of [The Jones Group's] failures in connection with their provision of services."

¶11. The Jones Group filed its answer and cross-claim on October 15, 2014, asserting several defenses. The Jones Group asserted that its principal place of business was in Hinds County and accordingly moved to change the venue to Hinds County. The Jones Group also moved to dismiss Alcatec's complaint, arguing that the statutory limitations period had run. The Jones Group filed a memorandum in support of their Mississippi Rule of Civil Procedure 12(b)(3) motion to dismiss for improper venue or, in the alternative, motion to change venue.

5

On February 6, 2015, the Rankin County Circuit Court transferred the case to the Hinds County Circuit Court.

¶12. On June 15, 2015, The Jones Group filed a Mississippi Rule of Civil Procedure 12(b)(6) motion to dismiss Alcatec's complaint. The Jones Group argued that Alcatec's claims for breach of contract were barred by the three-year statute of limitations. The Jones Group also asserted that the claims against Gennie Jones failed because she was not a party to the contract. The Jones Group further asserted that Rosemary Barbour was not a party to the contract and therefore not entitled to recover any damages. In its motion, The Jones Group referenced the order from the Court of Federal Claims.

¶13. On October 26, 2015, the Hinds County Circuit Court denied The Jones Group's motion to dismiss after finding that Alcatec's claim was not barred by the statute of limitations. The circuit court's order reflects that the statutory limitations period for indemnity under the contract between Alcatec and The Jones Group did not begin to run until the federal court of appeals entered its final judgment on July 11, 2012. The Hinds County Circuit Court accordingly held that Alcatec's suit, which was filed on August 7, 2014, was filed within three years of both the federal claim court's initial ruling and the appellate court's affirmance as to liability. The Hinds County Circuit Court further held that Gennie Jones may be personally liable to Alcatec if she had made an intentional misrepresentation; that Rosemary Barbour is an intended third-party beneficiary of the contract; and that because Alcatec asserted fraudulent concealment, they may have a claim for intentional infliction of emotional distress and punitive damages.

¶14.    Both parties then commenced with discovery.

¶15.    On September 26, 2017, The Jones Group filed a motion to amend their answer. In their motion, The Jones Group alleged that on April 19, 2017, Alcatec produced their second supplemental responses to The Jones Group's first set of interrogatories. The Jones Group asserted that upon receiving this discovery response, it determined that Alcatec did not have any new information or evidence against The Jones Group that it had not previously argued and presented to the Court of Federal Claims. The Jones Group accordingly sought leave to amend their answer and plead the affirmative defense of res judicata and/or collateral estoppel in relation to the Court of Federal Claims opinion.

¶16.    Alcatec filed its response in opposition to The Jones Group's motion to amend its answer, arguing that Mississippi Rule of Civil Procedure 8(c) requires a defendant to plead affirmative defenses in its answer, or those defenses, including res judicata and collateral estoppel, are waived. Alcatec asserted that Gennie Jones was a witness before the Court of Federal Claims and that therefore The Jones Group knew of the Court of Federal Claims opinion when Alcatec filed its suit.

¶17.    On February 1, 2018, The Jones Group filed a motion for summary judgment and argued the following: (1) Barbour's fraudulent conduct, and not the conduct of The Jones Group, was the sole and proximate cause of Alcatec's damages; (2) Barbour's conduct was, at the very least, the superseding cause of Alcatec's damages; and (3) Alcatec is estopped from re-arguing this matter because the issue of causation had already been thoroughly litigated before the Court of Federal Claims.

7

¶18. Alcatec filed a motion opposing summary judgment and requested that the circuit court strike The Jones Group's motion for summary judgment or stay briefing on the motion pending the circuit court's ruling on The Jones Group's motion to amend its answer. In its motion, Alcatec argued that The Jones Group could not assert collateral estoppel because they were neither a party nor in privity with a party to the case in the Court of Federal Claims and that the essential elements of collateral estoppel have not been met. Alcatec also argued that genuine issues of material fact existed as to whether The Jones Group's conduct proximately caused Alcatec's damages. Alcatec further submitted that Barbour's conduct did not qualify as a superseding intervening cause.

¶19. On June 14, 2018, the circuit court entered an order allowing The Jones Group to amend its answer to plead res judicata and collateral estoppel. Thereafter, The Jones Group filed its amended answer asserting that Alcatec's claim was barred by res judicata and/or collateral estoppel based upon the prior holding of the Court of Federal Claims. The Jones Group then filed a motion renewing its motion for summary judgment.

¶20. After a hearing on the matter, the circuit court entered an order on October 10, 2018, granting The Jones Group's motion for summary judgment and dismissing Alcatec's complaint with prejudice. The circuit court found that the doctrine of defensive collateral estoppel barred Alcatec from relitigating the issue of whether Barbour perpetrated a fraudulent scheme to submit duplicate invoices to FEMA for payment. The circuit court also determined that each of the six factors for determining whether a particular intervening force can be classified as a superseding cause "weighs in favor of a finding that Barbour's

8

intentional and fraudulent conduct was an intervening and superseding cause of the damages that are the subject of [Alcatec's] complaint." The circuit court further held that the damages sought by Alcatec "are not attributable to the Jones Group's performance or breach of any duty under the [c]ontract. Rather, the damages . . . are the result of the scheme to defraud the Government effectuated by Barbour."

¶21. Alcatec now appeals from the following orders: (1) the Rankin County Circuit Court's order transferring venue to the Hinds County Circuit Court, First Judicial District;[2] (2) the Hinds County Circuit Court's order granting The Jones Group's motion to amend its answer and denying Alcatec's motion to strike The Jones Group's motion for summary judgment or alternatively to stay and for expedited hearing on The Jones Group's motion to amend its answer; and (3) the Hinds County Circuit Court's order granting The Jones Group's motion for summary judgment. Alcatec also seeks to appeal "any other appealable order in this action."

**DISCUSSION**

¶22. Alcatec argues that the circuit court abused its discretion in granting The Jones Group's motion to amend their answer and add the affirmative defense of collateral estoppel. Alcatec maintains that prior to The Jones Group filing their motion to amend, the parties had actively litigated this case for nearly four years. Alcatec further asserts that pursuant to Rule 8(c), The Jones Group waived the defense of collateral estoppel by failing to plead it and by

---

[2] Although Alcatec's notice of appeal reflects that Alcatec appealed from this order, Alcatec's arguments on appeal center solely around the following two orders: the circuit court's order allowing The Jones Group to amend its answer and the circuit court's order granting summary judgment.

9

actively participating in this litigation for years before moving to amend their answer. Alcatec maintains that The Jones Group possessed awareness of the 2011 Court of Federal Claims opinion at the time The Jones Group filed its initial answer and therefore should have pled res judicata and collateral estoppel at that time.

¶23. The Jones Group argues, however, that in its initial answer, it asserted various affirmative defenses and reserved "the right to affirmatively plead any and all other defenses available to them which may become applicable through discovery and during the trial of this cause." The Jones Group maintains that after conducting discovery and reviewing the responses and documents produced, The Jones Group determined that Alcatec did not have any new information or evidence against The Jones Group that it had not previously argued and presented to the Court of Federal Claims.

¶24. We review a trial court's decision to grant or deny a motion to amend a pleading for an abuse of discretion. *Bailey Brake Farms Inc. v. Trout*, 116 So. 3d 1064, 1069 (¶19) (Miss. 2013). Mississippi Rule of Civil Procedure 15(a) provides:

> A party may amend a pleading as a matter of course at any time before a responsive pleading is served, or, if a pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within thirty days after it is served. . . . Otherwise a party may amend a pleading only by leave of court or upon written consent of the adverse party; leave shall be freely given when justice so requires.

¶25. Additionally, Mississippi Rule of Civil Procedure 8(c) states that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively" collateral estoppel and res judicata. *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 641 (Miss. 1991) (holding that collateral

estoppel and res judicata are affirmative defenses that are waived if not timely pled). The

supreme court has held that "generally, if a party fails to raise an affirmative defense in its

original answer, the defense will be deemed waived." *Hutzel v. City of Jackson*, 33 So. 3d

1116, 1119 (¶12) (Miss. 2010). "This rule aids in this Court's effort to ensure judicial

efficiency and the expeditious resolution of disputes . . . [and] gives parties incentive to be

more diligent in submitting defenses." *Id*. (citation and internal quotation marks omitted).

¶26.   The record before us contains an email correspondence between counsel for both

parties discussing The Jones Group's motion to amend its answer. Counsel for The Jones

Group emailed counsel for Alcatec and informed Alcatec of its intention to file a motion to

amend its answer to include the affirmative defenses of res judicata and collateral estoppel.

The email stated as follows:

> We plan to file a [m]otion to [a]mend [c]omplaint to raise additional defenses regarding punitive damages, res judicata and/or collateral estoppel, and intervening and/or superseding cause. As you may recall, the original [a]nswer was filed by Judge Bell prior to our involvement in this matter and before we had more information regarding [the plaintiff's] specific allegations against The Jones Group and Ms. Jones. Please advise if you will oppose the [m]otion so we can advise the judge.

Counsel for Alcatec responded via email, "Do you mean to amend the answer? If you plan

to amend answer I have no objection to the motion."

¶27.   At the hearing on The Jones Group's motion to amend its answer, the circuit court

referenced the email correspondence and stated to Alcatec's counsel that "if you represented

to defense counsel that you had no objection, . . . that's binding on you. What is your view

on why your agreement in writing is not binding?" Counsel for Alcatec then explained as

11

follows:

> Well, the e-mail forwarded to me was that . . . they were going to amend their complaint. . . . When they did that, honestly I don't know where I was when I responded to it, whether I was sitting in my office or looking on my cell phone looking at that e-mail. But generally I don't have an objection to a general amendment of an answer. But when it deals with affirmative-type claims, I want to see them before I make a response. When I saw amend the complaint, I think my comment was "Amend the—You mean you want to amend your answer." "If you want to amend your answer, I'm okay with that." I was not okay with adding affirmative defenses and things of that nature. I'd want to see those before I . . . agree to affirmative defenses, particularly affirmative defenses . . . like collateral estoppel and res judicata three and a half years into a case. So . . . if they wanted to amend the responses to—specific responses to the complaint in terms of amending their answer, that's fine. Affirmative defenses are different. I don't think I saw or read the entire e-mail when I went through that. I knew they didn't file a complaint and so I was clarifying what—you know, what it is that they were doing. . . . And I think that was an error on my part. And once I realized that they were asserting and saw what they were trying to do, I felt like I had no choice . . . .

The circuit judge assured counsel for Alcatec that he understood what he was saying, but the circuit judge explained that "what the [c]ourt has before it in an e-mail would indicate that the plaintiff has no objection." The circuit judge recognized that "a party has the right to amend a pleading upon a showing of good cause." The circuit judge stated that according to its motion to amend, The Jones Group "learned through discovery that collateral estoppel and res judicata would be issues," but the circuit judge also stated that he had "some question" about that assertion.

¶28. Interestingly, the circuit court held, "It seems pretty clear to the [c]ourt that based on the complaint that was filed in 2014, the federal litigation was part of [Alcatec's] complaint and part of the background in this case and [The Jones Group] knew about it." The circuit

12

court also held that it was "of the view that some of the defenses that [The Jones Group][3] raised in their initial answer . . . referenced, while not directly, the wrongdoing of the plaintiff which was the holding in part of the federal court." The circuit court specifically referred to The Jones Group's tenth defense in its initial answer, which stated, "[Alcatec's] claims are barred in whole or in part because [Alcatec] alleged damages are the result of their own actions, actions which were the proximate cause of [Alcatec's] alleged damages." The circuit court accordingly determined that "the issues of collateral estoppel that are being sought to be raised here are implicated by the tenth defense that was already raised in the initial answer." The circuit court therefore granted The Jones Group's motion to amend its answer, explaining that it was doing so for multiple reasons: "because the Court is of the view that [Alcatec] indicated that they would have no objection to it; and, second, because the issue of the finding of the federal court of wrongdoing on the behalf of [Alcatec] was raised in the initial answer filed in October of 2014." The circuit court also stated that it was exercising "its general discretion under the rules to allow parties to freely amend the pleadings."

¶29. In *Hutzel*, 33 So. 3d at 1119 (¶11), the plaintiff argued that the trial court erred in allowing the defendant to amend its answer two years later to assert the affirmative defenses

---

[3] The circuit court actually stated, "It seems pretty clear to the [c]ourt that based on the complaint that was filed in 2014, the federal litigation was part of your complaint and part of the background in this case and plaintiff knew about it." The circuit court also held that it was "of the view that some of the defenses that plaintiff raised in their initial answer, Docket Number 7 filed October 14, referenced, while not directly, the wrongdoing of the plaintiff which was the holding in part of the federal court[.]" However, based on our reading of that section of the transcript, it seems that the circuit court inadvertently said "plaintiff" on several occasions when meaning "defendant," referring to The Jones Group.

13

of release and accord and satisfaction when the defendant failed to assert the defenses in its initial answer. On appeal, the supreme court found that when the defendant filed its initial answer, it raised several affirmative defenses. *Id*. at 1120 (¶17). However, the defendant had failed to raise the specific affirmative defenses of release and accord and satisfaction until over two years later. *Id*.

¶30. The *Hutzel* court discussed its prior ruling in *MS Credit Center Inc. v. Horton*, 926 So. 2d 167, 180 (¶44) (Miss. 2006), where the supreme court found: "A defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." The *Horton* court explained that "a party does not have an established number of days within which he or she must raise an affirmative defense," but it held that absent any "extreme and unusual circumstances which prohibit the party from asserting the defense," the eight-month unjustified delay in *Horton*, "coupled with active participation in the litigation process, constitutes waiver as a matter of law." *Id*. at 1119-20 (¶13) (citing *Horton*, 926 So. 2d at 181 (¶45)). The *Horton* court specifically stated that its holding was not limited just to the assertion of the right to compel arbitration, but rather should be "taken as the general rule for all affirmative defenses." *Id*. at 1120 (¶14) (citing *Horton*, 926 So. 2d at 180 (¶44)).

¶31. The *Hutzel* court then applied its prior ruling from *Horton* and found that the defendant's two-year delay in raising its affirmative defenses "is three times the length of delay in *Horton* . . . and thus satisfied the delay element." *Id*. at (¶17).

14

¶32.   As to the element of active participation, the supreme court stated that "it is not evident from the record that the [defendant] engaged in extensive pretrial practice." *Id*. at (¶18).  However, the supreme court found that "both parties did participate in discovery by filing interrogatories and requests for production of documents." *Id*.  The supreme court held that the defendant's "filing of its initial answer . . . , coupled with its participation in the discovery process . . . , sufficiently establish that the [defendant] actively participated in the litigation."   *Id*. at 1121 (¶18).   The supreme court found "no unusual or extreme circumstances" in the record to explain the defendant's failure to timely assert its affirmative defenses.  *Id*. at (¶19).  Rather, "[t]he only argument presented by the [defendant] is that the affirmative defenses did not become apparent until well into discovery[.]" *Id*.  The supreme court found this assertion unpersuasive, explaining that the record revealed that the defendant "actually drafted the quitclaim deed, the foundation of its affirmative defenses, and had received it from [plaintiff] well before the commencement of this action." *Id*.  The supreme court therefore had no doubt that the defendant "knew about the contents of a document that it had drafted and had in its possession." *Id*.  Accordingly, the supreme court held that "no reasonable explanation accounts for the [defendant's] failure to assert the affirmative defenses punctually." *Id*.

¶33.   The *Hutzel* court then set forth that "when reviewing a trial court's decision to grant or deny a party's request to amend pleadings pursuant to Rule 15 over an objection grounded in Rule 8(c), this Court will adhere to the rule expressed in *Horton*, giving full effect to the mandatory language of Rule 8(c)." *Id*. at 1122 (¶24).  The supreme court ultimately held that

15

"pursuant to *Horton* and Rule 8(c), because the [defendant] actively participated in the litigation and has no reasonable explanation for its twenty-six month delay in raising the affirmative defenses, the [defendant] has waived its right to assert release and accord and satisfaction." *Id*. at (¶20). The supreme court therefore found that the trial court abused its discretion in allowing the defendant to amend its answer. *Id*. at (¶25).

¶34. In *Charlot v. Henry*, 45 So. 3d 1237, 1243 (¶21) (Miss. Ct. App. 2010), the defendant argued that the chancellor abused its discretion by not allowing her to amend her answer to plead the affirmative defense of adverse possession. In that case, the chancellor denied the defendant's request to amend her answer to plead the affirmative defense of adverse possession after the chancellor determined that the "claim of adverse possession was ripe at the time the original complaint was served." *Id*. at 1244 (¶24). On appeal, this Court applied the supreme court's holding in *Hutzel* and found that the defendant "offered no credible reason for the six-month delay between the filing of her answer and the filing of her motion to amend the answer to raise the affirmative defense of adverse possession." *Id*. at 1246 (¶29). This Court found that the defendant's excuse for her delay in filing her motion to amend her answer "was that she was unsure what property was involved in the lawsuit." *Id*. This Court agreed with the chancellor's finding that the defendant's reason for the delay was "spurious," explaining that the plaintiff's complaint "specifically described the disputed property by a clear deraignment of title and by a survey by a registered surveyor and an affidavit by the surveyor." *Id*. This Court found that "[t]he affirmative defense of adverse possession would have existed prior to the filing of the lawsuit, so it was not a fact which

16

would have been found only through discovery." *Id*. This Court therefore held that chancellor did not abuse her discretion by denying the defendant's motion to amend her answer to assert the affirmative defense of adverse possession after finding that the defendant waived the defense. *Id*.

¶35.    In the case before us, The Jones Group filed its initial answer October 15, 2014. As stated, in its initial answer, The Jones Group asserted various affirmative defenses and reserved "the right to affirmatively plead any and all other defenses available to them which may become applicable through discovery and during the trial of this cause." On September 26, 2017, nearly three years after filing its initial answer, The Jones Group filed its motion to amend its answer, seeking to add the affirmative defenses of res judicata and collateral estoppel. In *Hutzel*, the supreme court found that the defendant's two-year delay in raising its affirmative defenses "satisfie[d] the delay element." *Id*. at 1120 (¶17).

¶36.    As to the element of active participation, the record shows that The Jones Group filed its initial answer, as well as a motion to dismiss and a motion to change venue, and also participated in discovery. In July 2016, the Jones Group propounded interrogatories and requests for production of documents to Alcatec. In December 2016, The Jones Group served their responses to Alcatec's interrogatories and request for production of documents. In January 2017, The Jones Group filed a motion to compel Alcatec to fully respond to The Jones Group's first set of interrogatories and the requests for production of documents. The Jones Group also filed a motion for the circuit court to set the matter for trial and for entry of a scheduling order. In March 2017, The Jones Group filed a motion to compel Alcatec's

17

discovery responses and a motion for sanctions. In April 2017, The Jones Group filed a notice of hearing to set the hearing for their motion to compel and for sanctions. In July 2017, The Jones Group filed another notice of discovery, serving interrogatories, requests for production of documents, and requests for admissions to Alcatec. In August 2018, the parties deposed Gennie Jones.

¶37. In *Hutzel*, the supreme court found that the defendant actively participated in the litigation where the defendant filed its initial answer and participated in discovery by "filing interrogatories and requests for production of documents." *Hutzel*, 33 So. 3d at 1120 (¶18). Likewise, we find that the record shows that The Jones Group actively participated in the litigation herein.

¶38. The *Hutzel* court next examined the record for any "unusual or extreme circumstances" to explain the defendant's failure to timely assert its affirmative defenses, but it found none. *Id*. at (¶19). The supreme court found that the defendant instead argued that "the affirmative defenses did not become apparent until well into discovery[.]" *Id*. As stated, The Jones Group based its request to amend its answer on Alcatec's responses and assertions set forth in their second supplemental responses to The Jones Group's first set of interrogatories, which the Jones Group received in April 2017. In its appellate brief, The Jones Group explains that it initiated written discovery to obtain specific information regarding the general allegations Alcatec raised in its complaint against The Jones Group. The Jones Group asserts that after reviewing Alcatec's discovery responses and document production, "it became evidently clear that Alcatec did not have any new information and/or

18

evidence against [The Jones Group] that was not previously argued and presented to the federal court." The Jones Group maintains that it then accordingly advised counsel for Alcatec that it planned to move to amend it answer to include the affirmative defenses of res judicata and/or collateral estoppel.

¶39. Our review of the record clearly shows that The Jones Group knew about the 2011 Court of Federal Claims opinion at the time it filed its initial answer. As stated, the federal court opinion reflects that Jones testified as a witness in that matter and refuted allegations that The Jones Group was involved in or responsible for defrauding FEMA. Furthermore, in its June 15, 2015 motion to dismiss the complaint based on the statute of limitations, The Jones Group referenced the opinion from the Court of Federal Claims. At the hearing on The Jones Group's motion to amend its answer, the circuit court also found that "[i]t seems pretty clear to the [c]ourt that based on the complaint that was filed in 2014, the federal litigation was part of [Alcatec's] complaint and part of the background in this case and [The Jones Group] knew about it." However, The Jones Group failed to specifically raise the affirmative defenses of res judicata and collateral estoppel in its initial answer. At the motion hearing, the circuit court found that "some of the defenses that [The Jones Group] raised in their initial answer . . . referenced, while not directly, the wrongdoing of the plaintiff which was the holding in part of the federal court." As stated, the circuit court cited this as one of the reasons it allowed The Jones Group to amend its answer.

¶40. Pursuant to the supreme court's holding in *Hutzel*, 33 So. 3d at 1122 (¶24), "when reviewing a trial court's decision to grant or deny a party's request to amend pleadings

19

pursuant to Rule 15 over an objection grounded in Rule 8(c), this Court will adhere to the rule expressed in *Horton*, giving full effect to the mandatory language of Rule 8(c)." Here, our review of the record shows that The Jones Group actively participated in the litigation and has failed to provide a reasonable explanation for its nearly three-year delay in raising the affirmative defense of collateral estoppel. The Jones Group thus waived its right to assert this affirmative defense. *See id.* Accordingly, we find that the circuit court abused its discretion in allowing The Jones Group to amend its answer and include the affirmative defense of collateral estoppel. We therefore reverse the circuit court's order allowing The Jones Group to amend its answer.[4]

---

[4] Although The Jones Group sought to amend its answer to add the defense of collateral estoppel, it did not ask to add any other defenses. Nonetheless, the dissent argues that Alcatec's complaint is barred by the doctrine of unclean hands, the doctrine of in pari delicto, and/or the wrongful conduct rule. (Dis. Op. at ¶43). The dissent acknowledges that The Jones Group failed to plead these defenses below, but the dissent argues that this Court should raise these doctrines sua sponte and affirm the dismissal of Alcatec's complaint. (Dis. Op. at ¶47).

Generally, "[t]he defense should raise the clean hands doctrine in the answer if the lack of clean hands is known before trial," and the "[f]ailure to do so may waive the defense." James W. Shelson, *Mississippi Chancery Practice* § 2:27, Westlaw (database updated June 2019). In *Deliman v. Thomas*, 16 So. 3d 721, 726 (¶25) (Miss. Ct. App. 2009), this Court held that the issue of the doctrine of unclean hands "was not raised at the hearing or before the chancellor. Consequently, . . . the issue is not properly before this Court on appeal." In *Bardwell v. White*, 762 So. 2d 778, 783 (¶32) (Miss. Ct. App. 2000), this Court found that the appellant's argument that the chancellor erred in failing to dismiss the appellee's complaint based on the doctrine of unclean hands was not brought before the chancellor. This Court stated that it "should undertake consideration of no matter which has not first been presented to and decided by the trial court." *Id.* (quoting *Barnes v. Singing River Hosp. Sys.*, 733 So. 2d 199, 202 (¶9) (Miss. 1999)). This Court accordingly held that it "will not find the lower court in error on a matter not presented for a decision." *Id.* Because The Jones Group failed to plead or raise these defenses below, we therefore find that this issue is not properly before this Court on appeal.

As acknowledged by the dissent, the record reflects that the circuit court did raise the issue of unclean hands sua sponte during the hearing on The Jones Group's motion for

20

¶41. As stated, the circuit court also based its order granting summary judgment on its finding that Barbour's conduct "was an intervening and superseding cause of the damages that are the subject of [Alcatec's] complaint." However, the supreme court has held that the issue of superseding intervening cause is a question of fact for the jury to decide. *See O'Cain v. Harvey Freeman & Sons Inc.*, 603 So. 2d 824, 830 (Miss. 1991) ("[T]he question of superseding intervening cause is so inextricably tied to causation, it is difficult to imagine a circumstance where such issue would not be one for the trier of fact."). As a result, we also reverse the circuit court's order granting summary judgment in favor of The Jones Group, and this case is remanded for a trial on the merits.

¶42. **REVERSED AND REMANDED.**

**BARNES, C.J., GREENLEE, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. TINDELL AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. J. WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J.**

**J. WILSON, P.J., DISSENTING:**

¶43. This is a remarkable lawsuit. Alcatec is suing a former subcontractor to recover "damages" consisting of contract payments that Alcatec forfeited and penalties that Alcatec was assessed because a federal court found that Alcatec knowingly and intentionally

---

summary judgment. In response, counsel for Alcatec argued that The Jones Group never raised or pled the defense of unclean hands. The circuit court then asked The Jones Group to file a supplemental brief on the issue of unclean hands, which it did. However, the circuit court's order granting summary judgment did not address the issue of unclean hands or The Jones Group's supplemental brief on that issue. Furthermore, neither Alcatec nor The Jones Group has briefed the issue of unclean hands on appeal. Because Alcatec has not been given an opportunity to make arguments in defense of an assertion of "unclean hands," this Court should refrain from making such a finding on our own motion.

21

perpetrated a scheme to defraud the United States. I agree with Alcatec that the doctrine of collateral estoppel does not apply because The Jones Group was neither a party to the federal case nor in privity with the United States. However, I would hold that Alcatec's complaint is barred by the doctrine of unclean hands, the doctrine of in pari delicto, and/or the wrongful conduct rule. Accordingly, I respectfully dissent.

¶44. Following an eight-day trial, the United States Court of Federal Claims found by clear and convincing evidence that Alcatec and its sole owner and managing member, Rosemary Barbour, engaged in a scheme to knowingly and intentionally defraud the United States by submitting false and fraudulent invoices. *See generally Alcatec LLC v. United States*, 100 Fed. Cl. 502 (2011). Based on Alcatec's fraud, the court ruled that Alcatec had forfeited the allegedly unpaid balance of its federal contract and also ordered Alcatec to pay $77,000 in penalties and $275,050 in investigative costs. *Id.* at 529. It bears emphasis that the court was required to and did find, by clear and convincing evidence, that Alcatec and Barbour specifically intended to defraud the United States—the court noted that mere "negligence or ineptitude" would not have warranted a forfeiture. *Id.* at 517. On appeal, the United States Court of Appeals for the Federal Circuit affirmed the judgment against Alcatec. *Alcatec LLC v. United States*, 471 F. App'x 899 (Fed. Cir. 2012) (per curiam).

¶45. Now, in this lawsuit against a former subcontractor, Alcatec seeks to recover as "damages" the same contract payments that it forfeited and penalties that it was assessed as a result of its own fraudulent conduct. The gravamen of Alcatec's complaint is that The Jones Group overstated its experience and capabilities, failed to perform under its

22

subcontract, and ultimately caused Alcatec to submit erroneous invoices to the Federal Emergency Management Agency (FEMA). However, Alcatec's claim is contrary to the finding of the Court of Federal Claims, which was subsequently affirmed on appeal, that Alcatec *knowingly and intentionally* submitted false and fraudulent invoices to FEMA.

¶46. Regardless of whether The Jones Group waived its collateral estoppel argument, I agree with Alcatec that Mississippi's version of the doctrine does not apply in this case because The Jones Group was neither a party to the federal case nor "in privity" with the United States. "The doctrine of collateral estoppel provides that an issue of ultimate fact determined by a prior judgment may not be relitigated *between the same parties* in a subsequent action." *State v. Oliver*, 856 So. 2d 328, 331 (¶7) (Miss. 2003) (emphasis added). "[S]trict identity of parties is not necessary for . . . collateral estoppel to apply, if it can be shown that a nonparty stands in privity with the party in the prior action." *Hogan v. Buckingham ex rel. Buckingham*, 730 So. 2d 15, 18 (¶11) (Miss. 1998). "It must be remembered, however, that Mississippi follows the general rule that parties must be substantially identical for res judicata to apply." *Id.* The Mississippi Supreme Court has recognized only two limited exceptions to this general rule: (1) a criminal defendant convicted of rape cannot relitigate his guilt in a subsequent civil action filed by the victim (i.e., the "prosecuting witness"), *Jordan v. McKenna*, 573 So. 2d 1371, 1377 (Miss. 1990), and (2) a finding against an injured party in a personal injury action estops that party's spouse from relitigating the same issue in a derivative claim for loss of consortium, *McCoy v. Colonial Baking Co.*, 572 So. 2d 850, 853-54 (Miss. 1990). *See also Bell v. Texaco Inc.*, No.

23

5:09-CV-192-KS-MTP, 2010 WL 5330729, at \*2-3 (S.D. Miss. Dec. 21, 2010) (discussing

Mississippi's strict mutuality requirement and describing *Jordan* and *McCoy* as "two rather

limited exceptions"). All that can be said in this case is that The Jones Group's owner was

a nonparty witness in the prior litigation between Alcatec and the United States. The Jones

Group was not "in privity" with the United States. Therefore, it cannot rely on the federal

judgment against Alcatec as the basis for a collateral estoppel argument.

¶47.    Although collateral estoppel is inapplicable, Alcatec's complaint should be dismissed

based on the doctrine of unclean hands,[5] the doctrine of in pari delicto,[6] and/or the wrongful

conduct rule.[7] The Jones Group failed to plead these defenses as well,[8] but our Supreme

---

[5] *See, e.g.*, *Estate of Van Ryan v. McMurtray*, 505 So. 2d 1015, 1019 (Miss. 1987) (holding that the unclean hands doctrine barred fiduciaries' claims for quantum meruit damages because they "had violated their fiduciary duties by taking money to which they were not entitled").

[6] *See Greenline Equip. Co. v. Covington County Bank*, 873 So. 2d 950, 958 (¶26) (Miss. 2002) (holding that the doctrine of in pari delicto barred a party found liable for conversion from recovering from an alleged joint tortfeasor); *In Pari Delicto Doctrine*, Black's Law Dictionary 944 (11th ed. 2019) ("The principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing."); 27A Am. Jur. 2d *Equity* § 24, Westlaw (database updated May 2020) ("A maxim that is closely related to, and that has been described as a corollary of, the clean-hands maxim is 'in pari delicto' . . . . In fact, in some jurisdictions, courts use unclean hands and in pari delicto interchangeably . . . . The common-law defense of in pari delicto prohibits a party from recovering damages arising from misconduct for which the party bears responsibility, bears fault, or that resulted from the party's wrongdoing." (footnotes omitted)). In pari delicto has been described as the "counterpart legal doctrine to unclean hands," barring a suit for damages in circumstances in which unclean hands would bar equitable relief. *Byron v. Clay*, 867 F.2d 1049, 1052 (7th Cir. 1989).

[7] *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 484 (¶13) (Miss. 2006) ("If a plaintiff cannot open his case without showing that he has broken the law, a court will not aid him."); *W. Union Tel. Co. v. McLaurin*, 108 Miss. 273, 278, 66 So. 739, 740 (1914) ("The principle of public policy is that no court will lend its aid to a party who grounds his action upon an

24

"Court has held that when it is evident by the facts of the case that the unclean hands doctrine is applicable, the [court] has *a duty to apply that doctrine of its own motion.*" *Estate of Van Ryan*, 505 So. 2d at 1019 (emphasis added); *accord, e.g.*, *Estate of Nelson v. Nelson*, 266 So. 3d 1008, 1018 (¶36) (Miss. Ct. App. 2018), *cert. denied*, 267 So. 3d 278 (Miss. 2019). Moreover, a number of courts have held that an appellate court may invoke the doctrine sua sponte because its purpose is to protect the integrity of the courts, not the rights of the parties.[9] The same rationale applies to the related in pari delicto doctrine and wrongful conduct rule, which serve similar purposes.

¶48.    Our courts should not hear this case or provide the remedy that Alcatec seeks. The

immoral or illegal act.").

[8] The circuit court raised the issue of unclean hands sua sponte during the hearing on The Jones Group's motion for summary judgment. Alcatec argued that the defense had not been pled. In response to the circuit court's questions, The Jones Group filed a supplemental brief on the issue. The Jones Group has not briefed the issue on appeal.

[9] *See, e.g.*, *In re Estate of Pedrick*, 482 A.2d 215, 222 & n.10 (Pa. 1984) (holding that an appellate court may raise the doctrine sua sponte because it is based on "public policy," not "the rights or liabilities of the parties"); *Stachnik v. Winkel*, 230 N.W.2d 529, 532 (Mich. 1975) ("Since the clean hands maxim is designed to preserve the integrity of the judiciary, courts may apply it on their own motion even though it has not been raised by the parties or the courts below."); *Malone v. State ex rel. Gallion*, 234 So. 2d 32, 35 (Ala. 1970) ("[T]he maxim of unclean hands may be applied by the court sua sponte whether the question was raised in the lower court or not."); *Janke v. Janke*, 366 N.Y.S.2d 910, 915 (N.Y. App. Div. 1975) ("Although neither party raised the issue of unclean hands . . . [in the lower court], this court is not precluded from raising the issue [s]ua sponte for the first time on appeal not to favor defendant, but as a matter of public policy." (citations omitted)), *aff'd*, 350 N.E.2d 617 (N.Y. 1976) (affirming for the reasons stated by the Appellate Division); *Gratreak v. N. Pac. Lumber Co.*, 609 P.2d 375, 378 (Or. Ct. App. 1980) ("The doctrine of clean hands is applied for the protection of the integrity of the court and not for the benefit of the parties. The trial court or the appellate court may invoke the doctrine on its own motion." (citations omitted)); *Karpenko v. Leendertz*, 619 F.3d 259, 265 (3d Cir. 2010); *Foster v. Foster*, 655 S.E.2d 172, 177 (W. Va. 2007).

complaint makes clear that Alcatec's alleged damages consist of forfeitures ordered and penalties assessed by a federal court that found—by clear and convincing evidence in a decision that was affirmed on appeal—that Alcatec intentionally defrauded the United States. Alcatec should not be permitted to bring an action to recover damages that arose from its own fraudulent scheme.  The dismissal of Alcatec's complaint should be affirmed for that reason.

**WESTBROOKS, J., JOINS THIS OPINION.**