# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-02134-SCT

*HOMER HUTZEL*

*v.*

*CITY OF JACKSON, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/21/2008 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| | FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | STEVEN PRICE NIXON |
| | SEAN A. MILNER |
| ATTORNEYS FOR APPELLEE: | JAMES RICHARD DAVIS, JR. |
| | LARA E. GILL |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 05/06/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., DICKINSON AND KITCHENS, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1. Homer Hutzel filed suit for damages against the City of Jackson and Hemphill Construction Company alleging inverse condemnation, negligence, trespass, and nuisance arising out of the City of Jackson's efforts to improve the High Street corridor. The trial court granted summary judgment in favor of the City, finding that Hutzel had released the City from any and all claims arising from the High Street project, and that the consideration paid for the release was an accord and satisfaction of such claims. Hutzel appeals.

## FACTS AND PROCEDURE

¶2.     The relevant facts of the case are not in dispute.  In 1999, the City of Jackson sought to improve the segment of High Street between North State Street and Interstate 55.  To that end, City Project Number 464, commonly known as the High Street Improvement Project, was approved, and the City proceeded with the improvements.

¶3.     During the course of the project, a ten-foot strip of land on the south side of High Street, owned by Three W, a Mississippi general partnership, and subject to a leasehold held by Hutzel, was needed for the widening of the street.  The City of Jackson approached Three W and Hutzel and ultimately obtained a warranty deed from Three W, conveying the strip of land to the City, and a quitclaim deed from Hutzel, conveying his interest in the property to the City.  Hutzel was paid $2,500 as consideration for the conveyance.  In addition to the legal description and the conveyance language of the quitclaim deed, the document contained a release provision, which read:

> It is further understood and agreed that the consideration herein named is full, complete and final payment and settlement of any claims or demands for damage accrued, accruing, or to accrue to the grantors herein, their heirs, assigns, or legal representatives, for or on account of the construction of the proposed project No. 464, grade, water damage, and/or any other damage, right or claim whatsoever.

The quitclaim deed also said, "[i]t is further understood and agreed that this instrument constitutes the entire agreement between the grantor and the grantee, there being no oral agreements or representation of any kind."

¶4.     Prior to the conveyance of the land to the City, Hutzel had erected on the parcel a sign for Homer's Barbecue, which was removed after the strip of land had been conveyed to the

2

City. After the conveyance and the removal of the sign, however, Hutzel retained a leasehold interest in the parcel adjacent to (immediately south of) the ten-foot strip of land, where he continued to operate the restaurant, Homer's Barbecue.

¶5.    After commencement of the High Street Improvement Project, Homer's Barbecue allegedly began to suffer financially. Hutzel claimed that the City and its contractors had placed equipment, including machinery, barrels, traffic signs, and vehicles, in front of Homer's Barbecue during peak business hours and against the terms of the project, hindering customers from accessing the restaurant. Hutzel alleged that, as a consequence of these actions, Homer's Barbecue had suffered financially and eventually was forced to close its doors because of lost revenues.

¶6.    Hutzel filed suit against the City of Jackson and its contractor, Hemphill Construction Company, on January 13, 2003, alleging that the City's actions that negatively had affected the parcel that was not conveyed, on which Homer's Barbecue was located, were tantamount to an unconstitutional taking, negligence, nuisance, and trespass.[1] On February 11, 2003, the City of Jackson filed its answer and affirmative defenses.

¶7.    After engaging in discovery, on April 1, 2005, more than two years after the case had been filed, the City filed a motion for leave to amend its initial answer to include the affirmative defenses of release and accord and satisfaction. In its motion, the City alleged that certain events had transpired in the matter since the filing of its original answer, and that additional investigation had revealed additional defenses that were available to the defendant.

---

[1]Hutzel and Hemphill Construction Company reached a settlement agreement, and an order dismissing Hemphill was entered on December 20, 2004.

3

The City did not reveal what events or investigation had led to the discovery of the new defenses. Hutzel objected to the motion, arguing that, because the City had failed to plead the defenses in compliance with Mississippi Rule of Civil Procedure 8(c), the City had waived its right to assert them.

¶8. Rejecting Hutzel's argument, the trial court granted the City leave to amend, and the City's amended answer was filed on August 29, 2005, affirmatively asserting release and accord and satisfaction. Shortly thereafter, the City filed a motion for summary judgment, alleging that the release provision in the quitclaim deed signed by Hutzel had released the City from any and all liability related to the High Street Improvement Project. On April 23, 2007, the trial court entered a memorandum opinion and order granting the City's summary judgment motion, and a final judgment for the City was entered. It is from this order that Hutzel appeals.

## ISSUES

¶9. The two issues presented on appeal are (1) whether the trial court erred in allowing the City of Jackson to amend its answer, and (2) whether summary judgment in the City's favor was proper.[2] The adjudication of this matter on the first issue eliminates the need to address the second.

---

[2] The City of Jackson contends that Hutzel failed to preserve the issue of whether the City had waived its right to assert the affirmative defenses of release and accord and satisfaction by not raising these issues in his response to the City of Jackson's motion for summary judgment and by not raising the issue at the summary judgment hearing; however, because Hutzel objected to the City's motion to amend its answer in response to the motion, he has preserved the issue for appeal.

4

## STANDARD OF REVIEW

¶10.   When considering a trial court's decision to grant or deny a motion to amend a pleading, the standard of review is abuse of discretion.  ***Pratt v. City of Greenville***, 804 So. 2d 972, 978 (Miss. 2001).

## ANALYSIS

¶11.   Hutzel contends that, according to Mississippi Rule of Civil Procedure 8(c), the City waived its right to assert the affirmative defenses of release and accord and satisfaction when it failed to plead them in its initial answer and waited more than two years to assert these defenses.  The City vaguely alleges that these defenses were not apparent at the time it filed the initial answer, and that pursuant to Rule 15(a), leave to amend the pleadings should be given freely. M.R.C.P. 15(a).

¶12.   Rule 8(c) specifically requires that, in pleading to a preceding pleading, a party shall set forth affirmatively certain listed defenses, including accord and satisfaction and release.[3] M.R.C.P. 8(c).  This Court has interpreted this rule to mean that, generally, if a party fails to raise an affirmative defense in its original answer, the defense will be deemed waived. ***Pass Termite and Pest Control, Inc. v. Walker***, 904 So. 2d 1030, 1033 (Miss. 2004) (holding that defendant had waived the right to compel arbitration).  "Ordinarily, delay coupled with active

---

[3] Mississippi Rule of Civil Procedure 8(c) reads,

In pleading to a preceding pleading, a party shall set forth affirmatively *accord* and *satisfaction*, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, *release*, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. (Emphasis added.)

participation in a lawsuit serves to waive affirmative defenses that otherwise would terminate the action." *Price v. Clark*, 21 So. 2d 3d 509, 524 (Miss. 2009) (citing *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167, 181 (Miss. 2006)). This rule aids in "this Court's effort to ensure judicial efficiency and the expeditious resolution of disputes." *Walker*, 904 So. 2d at 1035. Moreover, this approach gives parties incentive "to be more diligent in submitting defenses." *Id.*

¶13. In *MS Credit Center, Inc. v. Horton*, 926 So. 2d 167, this Court was presented with the question of whether a defendant's failure to pursue actively the right to compel arbitration for eight months amounted to a waiver of that defense. The defendant in *Horton* had asserted an affirmative defense in prior pleadings, yet proceeded to engage in the litigation process by "consenting to a scheduling order, engaging in written discovery, and conducting Horton's deposition." *Id.* at 180. The Court in *Horton* noted that "[a] defendant's failure to timely and reasonably raise and pursue the enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." *Id.* at 181. The Court added that a party does not have an established number of days within which he or she must raise an affirmative defense; but, unless there are "extreme and unusual" circumstances which prohibit the party from asserting the defense, "an eight month unjustified delay in the assertion and pursuit of any affirmative defense . . . coupled with active participation in the litigation process, constitutes waiver as a matter of law." *Id.* at 181.

¶14. Ultimately, the Court found no reasonable explanation for the eight-month delay in asserting the arbitration defense, and it held that the defendant had waived its right to compel

6

arbitration. *Id.* at 181. Importantly, the Court added that its holding in *Horton* was not limited to the assertion of the right to compel arbitration, but that its pronouncement should be taken as the general rule for all affirmative defenses. *Id.* at 180.

¶15. In compliance with the rule announced in *Horton*, this Court consistently has held that, absent a reasonable explanation, failure to plead an affirmative defense according to Rule 8(c) will result in a waiver of that defense. In *Estate of Grimes v. Warrington*, 982 So. 2d 365 (Miss. 2008), the defendant doctor pled that he was entitled to tort immunity under the Mississippi Tort Claims Act (MTCA), but did not pursue the affirmative defense until five years later in his motion for summary judgment. *Id.* at 370. On appeal, this Court affirmed the trial court's finding that the doctor was immune from tort liability under the MTCA; however, because the doctor had actively engaged in the litigation and had failed to provide a reasonable explanation for his failure to raise the defense, he was prevented from using the otherwise outcome-determinative defense. *Id.*

¶16. Similarly, in *East Mississippi State Hospital v. Adams*, 947 So. 2d 887 (Miss. 2007), this Court was asked to determine whether the defendants, who had asserted the affirmative defenses of insufficient process and insufficient service of process in their initial answer, but had continued to participate in the litigation, had waived those defenses. *Id.* at 889. Relying on *Horton*, the Court held that, because the defendants had engaged in discovery and attended status conferences before reasserting these affirmative defenses nearly two years later, the defendants had waived the right to assert them. *Id.* at 891.

¶17. Applying the *Horton* rule to this case, we observe that the City of Jackson filed its initial answer on February 11, 2003, in which it raised several affirmative defenses, including

lack of jurisdiction, sovereign immunity, contributory negligence, and an allegation that the statute of limitations had run. Yet the City did not raise the affirmative defenses of release and accord and satisfaction until approximately twenty-six months later, on April 1, 2005. This delay is three times the length of delay in **Horton**, 926 So. 2d at 179, and thus satisfies the delay element.

¶18. As for active participation, it is not evident from the record that the City of Jackson engaged in extensive pretrial practice. Nonetheless, the record reveals that both parties did participate in discovery by filing interrogatories and requests for production of documents beginning in November 2003. In addition, the trial court docket indicates that a notice of deposition was filed in December 2003; however, nothing in the record before us reveals which party filed the notice or identifies the intended deponent. Although there seems to have been a lull in activity in 2004, the reason for it cannot be determined from the record.[4] Of course, this Court has no way of knowing whether the parties were engaged in settlement negotiations or mediation, trying to schedule depositions, actually conducting discovery, or engaging in other case-related activities not reflected in court records. Undocumented actions aside, the City's filing of its initial answer on February 11, 2003, coupled with its participation in the discovery process commencing as early as November 2003, sufficiently establish that the City actively participated in the litigation.

---

[4]Hutzel asserts that the lull in activity was the result of the City's changing its deputy city attorney assigned to the case, which at the time of this appeal, allegedly had occurred four different times. The City of Jackson alleges that little happened in 2004 because Hutzel failed to prosecute the case; however, this contention was not developed by the City and is not supported by the record.

8

¶19. Lastly, the record reveals no unusual or extreme circumstances that explain the City's failure to assert the affirmative defenses in a timely manner. The only argument presented by the City is that the affirmative defenses did not become apparent until well into discovery; however, this contention is not persuasive, as the City actually drafted the quitclaim deed, the foundation of its affirmative defenses, and had received it from Hutzel well before the commencement of this action. Undoubtedly, the City knew about the contents of a document that it had drafted and had in its possession. Accordingly, no reasonable explanation accounts for the City's failure to assert the affirmative defenses punctually.

¶20. Therefore, pursuant to *Horton* and Rule 8(c), because the City actively participated in the litigation and has no reasonable explanation for its twenty-six month delay in raising the affirmative defenses, the City has waived its right to assert release and accord and satisfaction.

¶21. The City contends that, pursuant to Rule 15(a), the trial court properly allowed it to amend its answer to include its affirmative defenses. Rule 15(a) provides, in relevant part, that "a party may amend a pleading only by leave of court or upon written consent of the adverse party," and that "leave shall be freely given when justice so requires." M.R.C.P. 15(a). The City relies on *Red Enterprises, Inc. v. Peashooter, Inc.*, 455 So. 2d 793 (Miss. 1984), and *Bennett v. Madakasira*, 821 So. 2d 794 (Miss. 2002), each of which stands for the proposition that amendments to pleadings should be granted freely if the nonmoving party is not prejudiced by the desired amendment.

9

¶22. In **Red Enterprises**, a case applying Rule 15(b),[5] the defendant sought to prove accord and satisfaction at trial, having neither pled that affirmative defense nor sought leave to amend its pleadings. **Red Enterprises**, 455 So. 2d at 794. During trial, the plaintiff objected to the introduction of the evidence, and the trial court sustained the objection, allowing a proffer. **Id.** On appeal, this Court held that, because the plaintiff would not have been prejudiced by the introduction of such evidence, the trial court had abused its discretion in not allowing the defendant to amend its pleadings under Rule 15(b). **Id.** at 796. However, in reaching this conclusion, this Court failed to address Rule 8(c)'s mandatory language and whether the defendant had a reasonable explanation for not having asserted the affirmative defense as required by the Rule 8(c). Even the United States Supreme Court's decision of **Foman v. Davis**, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962), the opinion upon which the **Red Enterprises** Court relied, noted that, under Federal Rule of Civil Procedure 15(a), leave should be freely given only "[i]n the absence of any apparent or declared reason – such as undue delay. . . ."

¶23. In **Bennett**, 821 So. 2d at 802, the trial court allowed defendant doctors to assert that the statute of limitations had run after they had failed to plead that affirmative defense in their initial answer. Again, as in **Red Enterprises**, the plaintiff asserted that, pursuant to Rule 8(c), the defendants had waived their right to assert the affirmative defense that the statute

---

[5] Mississippi Rule of Civil Procedure 15(b) allows amendments to pleadings when "issues not raised by the pleadings are tried by expressed or implied consent. . . ." M.R.C.P. 15(b). Here, Hutzel objected to the City's motion to amend its answer to include the affirmative defenses of release and accord and satisfaction. Therefore, he did not consent to the City's assertion of these defenses. Moreover, the City does not allege that these affirmative defenses were tried by consent.

of limitations had run. Yet, on appeal, this Court looked only to whether the plaintiff had been prejudiced. **Id.** It did not look to the extent of delay, the degree of the doctors' participation in the litigation, or the reasonableness of the defendants' failure to assert the affirmative defense as required by Rule 8(c). The Court ultimately held that plaintiff had not been prejudiced by the assertion of the defense, and that because "Rule 15(b) liberally permits the amendments of pleadings," the trial court did not err in allowing the defendants to amend the pleadings according to Rule 15(b).

¶24.    Reconciling this Court's opinions in *Red Enterprises* and *Bennett* and the opinions in *Horton*, *Warrington*, and *Adams*, the former cases remain sound law with regard to when leave should be granted to amend pleadings pursuant to Rule 15; however, when reviewing a trial court's decision to grant or deny a party's request to amend pleadings pursuant to Rule 15 over an objection grounded in Rule 8(c), this Court will adhere to the rule expressed in *Horton*, giving full effect to the mandatory language of Rule 8(c). As stated *supra*, doing so ensures "judicial efficiency and the expeditious resolution of disputes." *Walker*, 904 So. 2d at 1035.

**CONCLUSION**

¶25.    The City of Jackson failed to abide by Mississippi Rule of Civil Procedure 8(c) by pleading release and accord and satisfaction in its initial answer, and the City did not raise those defenses until twenty-six months later, having actively participated in the litigation during that period. As the City has not advanced a reasonable explanation to account for its inordinate delay, it has waived its right to assert release and accord and satisfaction, and the

trial judge abused his discretion in allowing the City to amend its answer. This case is therefore reversed and remanded for a trial on the merits.

¶26. **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PIERCE JJ., CONCUR.**