# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01406-COA

**BRENDA COOK**                                                               **APPELLANT**

**v.**

**AMOS TAYLOR**                                                                **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/15/2019 |
| TRIAL JUDGE: | HON. LINDA F. COLEMAN |
| COURT FROM WHICH APPEALED: | QUITMAN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS ALAN WOMBLE |
| | BETHANY ANN TARPLEY |
| ATTORNEY FOR APPELLEE: | LAWRENCE JOHN TUCKER JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 02/22/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.     Brenda Cook filed a negligence action against Amos Taylor, individually, in the Quitman County Circuit Court, seeking actual and compensatory damages for injuries she allegedly incurred when their vehicles collided. The circuit court granted summary judgment in Taylor's favor on the ground of qualified immunity, finding that Taylor was acting in the course and scope of his duties as a volunteer firefighter at the time of the accident and that he did not act with reckless disregard for the safety of any person.

¶2.     Cook appeals, seeking reversal of the circuit court's judgment and remand of this case for further proceedings. Cook asserts on appeal that Taylor waived his qualified immunity defense when he did not plead it as an affirmative defense in his answer and did not raise it

before the circuit court until fourteen months later when he moved for summary judgment on that basis, after having actively participated in the litigation process. We agree. For the reasons addressed below, we find that Taylor waived his qualified immunity defense. We therefore reverse the circuit court's judgment and remand this case for proceedings consistent with this opinion.

**PROCEDURAL HISTORY AND STATEMENT OF FACTS**

¶3. The record reflects that Taylor is a certified first responder and volunteer firefighter with the Marks volunteer fire department (Marks VFD). On September 14, 2017, at 1:48 p.m., the Quitman County Sheriff's Department received a report of an accident on Highway 3 in Vance. An emergency tone was sent to all available Lambert and Marks fire department units. Taylor was working at his maintenance job with the City of Marks when the emergency tone came across his eDispatch unit. He left work and headed to the Marks VFD station but found the fire truck had already pulled away. Taylor drove toward the scene of the crash in his personal vehicle.

¶4. On the way, Cook and Taylor were involved in an automobile accident on Highway 3. Cook and Taylor were both traveling southbound on Highway 3. Cook was attempting to make a left turn onto Riverside Road at a time when Taylor was in the northbound lane attempting to overtake and pass Cook. Their vehicles collided. The front right side of Taylor's vehicle and the front left side of Cook's vehicle were damaged in the collision.

¶5. Cook sued Taylor, individually, on March 2, 2018, in the Quitman County Circuit

2

Court. She sought actual and compensatory damages for injuries she allegedly received as a result of the collision. She alleged causes of action for negligence and negligence per se. According to the allegations of Cook's complaint, she was attempting to make a left turn off of Highway 3, and Taylor was "following too closely on the highway at a high rate of speed when he began his attempt to overtake and pass [Cook] in the left lane [and] . . . violently collided with the side of [Cook's] car as [she] attempted the left turn." She further alleged that Taylor was inattentively operating his vehicle and that he was negligent per se for violating certain rules of the road, including Mississippi Code Annotated section 63-3-1201 (Rev. 2013), which prohibits "reckless driving." Section 63-3-1201 provides that "[a]ny person who drives any vehicle in such a manner as to indicate either a wilful or a wanton disregard for the safety of persons or property is guilty of reckless driving."

¶6.    Taylor filed his answer on March 14, 2018, raising eight affirmative defenses, including an affirmative defense under Mississippi Rule of Civil Procedure 12(b)(6) that Cook's complaint failed to state a claim against him upon which relief could be granted. Taylor did not indicate anywhere in his answer that he was acting in his capacity as a volunteer firefighter for Marks VFD when the accident occurred, nor did Taylor assert any defense that he was entitled to qualified immunity under the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. § 11-46-9 (Supp. 2016), or that he was entitled to any other protection available under the MTCA.

¶7.    Along with filing his Answer, Taylor served Cook with interrogatories and requests

3

for production of documents. In his interrogatories, he asked standard questions about how the accident occurred and the nature of Cook's injuries. A week later, Cook served Taylor with similar discovery, and Taylor responded. In response to Cook's interrogatory asking him to "provide a narrative description of the accident," Taylor stated that he was a volunteer firefighter and was on his way to an accident. In another interrogatory, Cook asked whether Taylor intended to "rely upon affirmative defenses in [his] defense." In his response, Taylor referenced only the affirmative defenses set forth in his answer.

¶8. The parties' depositions took place six months later, on October 19, 2018. Neither Cook's nor Taylor's depositions were limited to particular issues. In his deposition, Taylor testified that he was a volunteer firefighter on the way to an accident when Taylor and Cook collided on Highway 3.

¶9. On October 29, 2018, Taylor issued a subpoena duces tecum to CSpire, seeking Cook's cellphone records from the afternoon of September 14, 2017 (the day of the accident).

¶10. Over a month later, on November 26, 2018, Taylor's lawyer sent an email to Cook's lawyer seeking a voluntary dismissal of Cook's lawsuit based upon Taylor's qualified immunity under the MTCA. He informed Cook's lawyer at this time that he intended to file a motion for summary judgment on the issue and furnished Cook's lawyer with the information he had gathered in support of dismissal on qualified immunity grounds.

¶11. The case proceeded. On March 1, 2019, Cook's lawyer sent a draft pretrial order to

4

Taylor's lawyer, asking him to complete the defendant's information and reminding him that they needed to "move this case along." In response, Taylor's lawyer said that Taylor still intended to move for summary judgment on qualified immunity grounds and apologized for his delay.

¶12. A week later, Taylor filed a "Notice of Intent to Utilize Records Pursuant to Mississippi Rule of Evidence 902(11)" that set forth his intent to use fire-services contracts between the Quitman County, Mississippi Board of Supervisors and the City of Marks "at the trial of this matter." In that same time-frame, Taylor also had issued and served additional subpoenas duces tecum to the Quitman County Sheriff Department and the Mississippi Highway Patrol for call logs and dispatch recordings from the day of the accident. In mid-April, Taylor's lawyer produced to Cook's lawyer the information he received in response to his subpoenas, and he again told Cook's lawyer that Taylor intended to file a motion for summary judgment on qualified immunity grounds.

¶13. A few days later, on April 19, 2019, Taylor's lawyer returned the draft pretrial order to Cook's lawyer with the defendant's portions completed. Taylor's lawyer also advised that he would be filing a summary judgment motion based on Taylor's qualified immunity once he had the call logs from the date of the accident transcribed.

¶14. On May 16, 2019, Taylor filed his motion for summary judgment asserting that he was entitled to qualified immunity under the MTCA. Cook asserted in her response that Taylor waived the affirmative defense of qualified immunity when he failed to plead it in his answer

and then extensively participated in litigation before raising it in his summary judgment motion fourteen months later. Taylor filed his rebuttal in support of his summary judgment motion on July 1, 2019.

¶15. On July 10, 2019, Taylor filed a motion to amend his answer, requesting "permission to amend his Answer to assert qualified immunity as a defense." In her response, Cook asserted that Taylor admitted that he "failed to raise the defense of qualified immunity in his [a]nswer which must be specifically pled," that Taylor did not file "any defenses to properly raise the defense of qualified immunity" in his answer, and that Taylor "should [not] be allowed to raise the defense at this late stage."

¶16. The circuit court did not rule on Taylor's motion to amend his answer.

¶17. On August 15, 2019, the circuit court entered its order granting Taylor's motion for summary judgment, finding that he was entitled to qualified immunity pursuant to section 11-46-9(1)(c) and "that based on the facts most favorable to [Cook], [Taylor] did not act 'in reckless disregard of the safety and well being' of Cook." Cook appealed.

## STANDARD OF REVIEW

¶18. We review a trial court's ruling on the waiver of an affirmative defense for abuse of discretion. *Estate of Puckett v. Clement*, 238 So. 3d 1139, 1144 (¶9) (Miss. 2018). "Waiver is a matter of law where the material facts and circumstances are undisputed or clearly established." *Univ. of Miss. Med. Ctr. v. Hampton*, 227 So. 3d 1138, 1141 (¶10) (Miss. Ct. App. 2016) (quoting *Bott v. J.F. Shea Co.*, 388 F.3d 530, 534 (5th Cir. 2004)).

6

**DISCUSSION**

¶19. Cook asserts that Taylor waived any claim that he is entitled to qualified immunity under the MTCA because he did not plead it in his answer and then actively participated in the litigation process for fourteen months before moving for summary judgment based upon that defense. Taylor, on the other hand, asserts that the "catch-all" Rule 12(b)(6) defense that he raised in his answer was broad enough to preserve an MTCA qualified immunity defense. Taylor also asserts that the fourteen-month delay between his filing his answer and moving for summary judgment based on this defense was not "unreasonable" nor "unjustified," and thus this Court should find that no waiver occurred. We address these assertions below, beginning with an overview of the applicable law.

**I.      Applicable Law**

¶20. Under the MTCA, a governmental employee is entitled to qualified immunity if, while engaged in "activities relating to . . . fire protection," he did not act "in reckless disregard of the safety and well-being of any person" while engaged in those activities. Miss. Code Ann. § 11-46-9(1)(c).[1]  The MTCA defines "employee[s]" to include "firefighters who are

---

[1] It was not necessary for Taylor to establish that section 11-46-9(1)(c) applied or that he did not act with "reckless disregard." Under the MTCA, "no employee [of a governmental entity] shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. § 11-46-7(2) (Rev. 2019); *see also Wilcher v. Lincoln Cnty. Bd. of Supervisors & City of Brookhaven*, 243 So. 3d 177, 186 (¶25) (Miss. 2018) ("Under [the MTCA], if an employee was acting within the scope of his employment, then he cannot be individually sued."); *Jackson v. Hodge*, 911 So. 2d 625, 627 (¶9) (Miss. Ct. App. 2005) (holding that "a government employee who commits a traffic violation does not act outside the course and scope of his or her employment" for purposes

7

members of a volunteer fire department that is a political subdivision," Miss. Code Ann. § 11-46-1(f) (Supp. 2017), and it defines "political subdivision" to include a "volunteer fire department that is a chartered nonprofit corporation providing emergency services under contract with a county or municipality." Miss. Code Ann. § 11-46-1(i).

¶21. The supreme court and this Court "consider[] MTCA immunity as an affirmative defense." *Grimes ex rel. Estate of Grimes v. Warrington*, 982 So. 2d 365, 370 (¶24) (Miss. 2008); *accord Alexander v. Newton County*, 124 So. 3d 688, 690 (¶8) (Miss. Ct. App. 2013). Mississippi Rule of Civil Procedure 8(c) requires that answers to complaints "shall set forth affirmatively . . . any . . . matter constituting an avoidance or affirmative defense." In this regard, "the supreme court has held that 'generally, if a party fails to raise an affirmative defense in its original answer, the defense will be deemed waived.'" *Alcatec LLC v. Jones Grp. of Miss. LLC*, 297 So. 3d 302, 308 (¶25) (Miss. Ct. App. 2020) (quoting *Hutzel v. City of Jackson*, 33 So. 3d 1116, 1119 (¶12) (Miss. 2010)).

¶22. Regarding the timeliness of asserting an affirmative defense or right, the supreme court established in *Mississippi Credit Center Inc. v. Horton*, 926 So. 2d 167, 180 (¶44) (Miss. 2006), that "[a] defendant's failure to timely and reasonably raise and pursue the

---

of the MTCA). In other words, all that Taylor needed to do to establish his immunity from liability was show that he was acting within the course and scope of his employment with a governmental entity at the time of the accident. He should have asserted that defense in his answer, and he could have established the defense early in the case with little or no discovery. There is no explanation in the record as to why Taylor chose to pursue only the comparatively narrower immunity provided for in section 11-46-9(1)(c).

enforcement of any affirmative defense or other affirmative matter or right which would serve to terminate or stay the litigation, coupled with active participation in the litigation process, will ordinarily serve as a waiver." The *Horton* case concerned defendants' failure to pursue their right to compel arbitration, but the supreme court specified that its holding was not limited to the assertion and pursuit of that particular right. *Id.*

¶23. The supreme court further recognized that "absent extreme and unusual circumstances[,] an eight month unjustified delay in the assertion and pursuit of any affirmative defense or other right which, if timely pursued, could serve to terminate the litigation, coupled with active participation in the litigation process, constitutes waiver as a matter of law." *Id.* at 181 (¶45). Discussing this rule from the *Horton* decision, the supreme court recognized in *Hutzel* that "[t]his rule aids in this Court's effort to ensure judicial efficiency and the expeditious resolution of disputes . . . [and] gives parties incentive to be more diligent in submitting defenses." *Hutzel*, 33 So. 3d at 1119 (¶12) (citation and internal quotation marks omitted). As discussed in further detail below, in *Hutzel*, the supreme court applied the *Horton* doctrine and found that the defendant had waived the affirmative defenses of release and accord and satisfaction when it did not assert them in its answer and, after participating in discovery, moved to amend its answer to assert them two years later. *Id.* at 1120-21 (¶¶17-20).

¶24. In this case, fourteen months after having failed to raise a qualified immunity defense in his answer, and after participating in the litigation process, Taylor moved for summary

9

judgment based upon a qualified immunity affirmative defense. Cook's response raised Taylor's failure to plead a qualified immunity defense in his answer as a basis for denying Taylor's motion for summary judgment. For the first time, after filing his summary judgment rebuttal, Taylor moved to amend his answer to add a qualified immunity defense. The circuit court did not rule on Taylor's motion to amend his answer but implicitly did so when it granted summary judgment in Taylor's favor based upon Taylor's qualified immunity under the MTCA. For the reasons addressed below, we find that Taylor waived the MTCA qualified immunity affirmative defense. We therefore reverse and remand this case for a trial on the merits of Cook's negligence and negligence per se claims against Taylor.

## II.     Assertion of a Rule 12(b)(6) Defense

¶25.    We begin by addressing Taylor's first contention that because he asserted a "catch-all" Rule 12(b)(6) defense in his answer, this pleading was "arguably broad enough to encompass" and preserve a qualified immunity defense under the MTCA. The supreme court rejected a similar contention in *Burleson v. Lathem*, 968 So. 2d 930, 936 (¶16) (Miss. 2007), when the defendant contended that he had preserved the defenses of insufficiency of process and insufficiency of service of process when he asserted the catch-all Rule 12(b)(6) defense in his answer to the plaintiff's complaint. The supreme court found that "[s]uch an interpretation of the rules would allow the defendant more than one bite at the apple, since he could plead a Rule 12(b)(6) defense in the initial responsive pleadings, with the intent of asserting other Rule 12 defenses at a later time." *Id.* Continuing, the supreme court

recognized that such an argument also "fails to explain the existence of the remaining Rule 12(b) defenses and other affirmative defenses, which would be unnecessary if a party need only assert a Rule 12(b)(6) defense to preserve any objections to allegations set forth in the complaint." *Id.* For the same reasons, we find that Taylor's contentions on this point are without merit.

### III. Waiver

¶26. We next address Taylor's fourteen-month delay in moving for summary judgment on qualified immunity grounds—without ever having moved to amend his answer to assert this defense beforehand. We find instructive the supreme court's decision in *Hutzel* and its application of *Horton* under circumstances analogous to those in this case.

¶27. *Hutzel* concerned an improvement project along High Street in Jackson, Mississippi, undertaken by the City of Jackson. *Hutzel*, 33 So. 3d at 1117 (¶2). Homer Hutzel held a leasehold on property along High Street. *Id.* at (¶3). Pursuant to a quitclaim deed to the City, Hutzel conveyed his interest in a ten-foot strip of property along High Street. *Id.* Hutzel subsequently sued the City for damages to his business located on the adjacent property in which he still held an interest. *Id.* at 1118 (¶6). The City filed its answer, and after taking part in discovery for more than two years, the City sought leave to amend its initial answer to add release and accord and satisfaction as affirmative defenses. *Id.* at (¶7). The trial court allowed the City to do so and then granted summary judgment in the City's favor based upon certain release language contained in the quitclaim deed from Hutzel to the City. *Id.* at (¶8).

11

¶28.    On appeal, Hutzel contended that the trial court abused its discretion in allowing the City to amend its answer under these circumstances. *Id.* at 1119 (¶11). The supreme court agreed. *Id.* at 1120-21 (¶¶17-20). Applying its prior ruling in *Horton*, the supreme court found that the City's two-year delay in raising its affirmative defenses "is three times the length of delay in *Horton* . . . and thus satisfied the delay element." *Id.* at 1120 (¶17).

¶29.    Regarding the "active participation" element, the supreme court recognized that it did not appear from the record that the parties engaged in "extensive pretrial practice" but found that the parties had "participated in discovery by filing interrogatories and requests for production of documents." *Id.* at 1120-21 (¶18). On these facts, the supreme court found that "the City's filing of its initial answer on February 11, 2003, coupled with its participation in the discovery process commencing as early as November 2003, sufficiently establish that the City actively participated in the litigation [prior to seeking to amend its answer in April 2005]." *Id.* at 1121 (¶18).

¶30.    Lastly, the supreme court examined whether "extreme and unusual" circumstances warranted the City's delay and found that "no reasonable explanation accounts for the City's failure to assert the affirmative defenses punctually." *Id.* at (¶19). The City argued that it had a reasonable basis for the delay because the subject affirmative defenses "did not become apparent until well into discovery." *Id.* The supreme court rejected this argument, observing that "the City actually drafted the quitclaim deed, the foundation of its affirmative defenses, and had received it from Hutzel well before the commencement of this action." *Id.*

12

¶31. The supreme court summarized its holding as follows: "[P]ursuant to *Horton* and Rule 8(c), because the City actively participated in the litigation and has no reasonable explanation for its twenty-six month delay in raising the affirmative defenses, the City has waived its right to assert release and accord and satisfaction." *Id.* at (¶20).

¶32. Similarly, in *Grimes*, 982 So. 2d at 370 (¶27), the supreme court addressed whether the defendant had a reasonable explanation for waiting five years to assert an MTCA immunity defense while he "proceeded substantially to engage the litigation process by consenting to a scheduling order, participating in written discovery, and conducting depositions." The supreme court found that the defendant "offer[ed] no evidence that any information needed to assert this affirmative defense was not available to him from the inception of the litigation." *Id.* at (¶26). Under these circumstances, the supreme court found that the defendant's "failure actively and specifically to pursue his MTCA affirmative defense while participating in the litigation served as a waiver of the defense." *Id.* at (¶27).

¶33. We now turn to address the *Horton* "delay," "active participation," and "extreme and unusual circumstances" factors here. Regarding the "delay" element, Taylor never raised a qualified immunity affirmative defense before the circuit court until he sought summary judgment on this basis fourteen months after he filed his answer. This is nearly twice the length of delay in *Horton* and thus satisfies the "delay" element. *Horton*, 926 So. 2d 180 (¶¶44-45) (An eight-month unjustified delay coupled with active participation in the litigation constitutes a waiver of an affirmative defense.).

13

¶34.   Regarding the "active participation" element under *Horton*, during those fourteen months Taylor propounded and answered written discovery, participated in party depositions, issued three subpoenas duces tecum, filed a notice of intent to use certain records "at the trial of this matter," and furnished Cook's lawyer with the defendant's inserts to a draft pretrial order after Cook's lawyer urged him that they needed to "move this case along."  We find that these actions demonstrate that Taylor "actively participated" in the litigation process during the fourteen-month delay.  *See, e.g.*, *Hutzel*, 33 So. 3d at 1121 (¶18) (finding that the defendant's participation in the discovery process after filing its answer was sufficient to meet the *Horton* "active participation" element); *Grimes*, 982 So. 2d at 370 (¶27) (finding that the defendant "substantially engaged in the litigation process" by participating in written discovery and conducting depositions); *Horton*, 926 So. 2d at 180 (¶41) (finding "active participation" in the litigation where the defendant consented to "a scheduling order, engag[ed] in written discovery, and conduct[ed] [the plaintiff's] deposition").

¶35.   Regarding the final factor, we find that no "extreme and unusual" circumstances warranted Taylor's delay in asserting his qualified immunity defense, as he has offered no justification or reasonable explanation to account for his "failure to assert [this] affirmative defense[] punctually."  *Hutzel*, 33 So. 3d at 1121 (¶19); *see Horton*, 926 So. 2d at 181 (¶45). We address this finding in more detail below.

¶36.   Taylor was a volunteer firefighter responding to an emergency call when the accident between Taylor and Cook occurred.  Taylor knew this fact, of course, "from the inception

14

of the litigation." *Grimes*, 982 So. 2d at 370 (¶26). Taylor contends that these facts "support a qualified immunity defense," and as justification for not asserting this affirmative defense in his answer, Taylor asserts that he presented these facts early in the lawsuit in his discovery responses and in his deposition testimony. Taylor contends that Cook was thus "neither surprised nor prejudiced by the assertion of qualified immunity, and had a full and fair opportunity to conduct related discovery." We find that this contention is meritless.

¶37. The very reason that Rule 8(c) requires that affirmative defenses be *specifically* pled in a defendant's answer is to "'to give the plaintiff fair notice of the defense that is being advanced.'" *Latham v. Johnson*, 262 So. 3d 569, 582 (¶73) (Miss. Ct. App. 2018) (quoting *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008)). In this case, rather than providing "fair notice" to Cook of his qualified immunity affirmative defense, Taylor initiated discovery by serving Cook with standard interrogatories and requests for production of documents. Taylor then responded to similar general discovery propounded by Cook. The parties' depositions were taken in mid-October 2018. All the while, Cook, to her prejudice, did not know that Taylor intended to pursue a qualified immunity defense.

¶38. Taylor contends that Cook should have realized that he intended to rely on an MTCA qualified immunity defense because he stated in an interrogatory response and in his deposition that he was a volunteer firefighter responding to a call when the accident happened. But we find that because Taylor failed to plead a qualified immunity defense in his answer—*despite* these facts—Cook could have just as easily believed that Taylor did not

15

intend to rely on defenses that may have been available to him under the MTCA. This is all the more true here because Cook specifically asked Taylor in an interrogatory whether he intended to "rely upon affirmative defenses in [his] defense." Taylor responded by referring to the affirmative defenses he set forth in his answer—and Taylor's answer did not state a qualified immunity affirmative defense.

¶39. Cook is not responsible for gleaning Taylor's unasserted affirmative defenses from his discovery responses or deposition testimony. The law is clear that Taylor is responsible for asserting any affirmative defense at the risk of losing it if he fails to do so. *See* M.R.C.P. 8(c) ("[A] party shall set forth [in its answer] . . . any . . . matter constituting an avoidance or affirmative defense."); *Hutzel*, 33 So. 3d at 1119 (¶12) (recognizing that Rule 8(c) is generally interpreted "to mean that . . . if a party fails to raise an affirmative defense in its original answer, the defense will be deemed waived").

¶40. As noted, Taylor must provide Cook with "fair notice" of the affirmative defenses he intends to rely upon. *Latham*, 262 So. 3d at 582 (¶73). Taylor had the facts available to him that supported a qualified immunity affirmative defense from the "inception of the litigation," *Grimes*, 982 So. 2d at 370 (¶26), and Cook was denied "fair notice" of this affirmative defense while the parties engaged in substantial discovery on the merits of her case. Taylor's delay in punctually asserting his qualified immunity affirmative defense is neither justified nor excused under these circumstances. *See Hutzel*, 33 So. 3d at 1121 (¶19) (rejecting the defendant's assertion that its release and accord and satisfaction affirmative defenses "did

16

not become apparent until well into discovery" when the defendant had drafted the quitclaim deed that served as the foundation of its affirmative defenses and had received it from the plaintiff well before the action was commenced); *Alcatec*, 297 So. 3d at 311-13 (¶¶35-40) (finding that the defendant subcontractor waived res judicata / collateral estoppel affirmative defenses where it actively participated in litigation and failed to provide a reasonable explanation for its delay in raising those defenses, despite the subcontractor knowing about the federal court judgment forming the basis for those defenses since the lawsuit was filed against it); *Latham*, 262 So. 3d at 582 (¶74) (finding that the defendant waived the affirmative defense of pari delicto when he failed to assert it in his answer and actively participated in litigation without asserting the defense within a reasonable time).

¶41. Taylor also attempts to excuse his failure to timely raise a qualified immunity defense in his answer because of the purported "unique challenges" that he faced as "a volunteer firefighter sued solely in his individual capacity" in gathering information relating to Marks VFD's status as a "political subdivision" under section 11-46-1(i). We find no merit in this contention. The record reflects that no formal discovery was necessary to obtain this information. Taylor's lawyer obtained documentation from the Secretary of State's website relating to Marks VFD's corporate status, and he obtained the fire-services contracts between Marks VFD and Quitman County through an informal request to a Quitman County representative. This information was obtained on November 5, 2018. If Taylor believed this information was necessary in order for him to assert a qualified immunity defense in his

17

answer, he offers no explanation why he did not obtain it within thirty days after he was served with Cook's complaint, or why he did not promptly move to amend his answer when that information was received. Instead, Taylor filed his answer, and—although he raised eight defenses in that answer—he did not raise any affirmative defense under the MTCA. Nor did Taylor even affirmatively state anywhere in his answer that he was a volunteer firefighter responding to an emergency call when the accident occurred.

¶42. We also find relevant that while engaging in extensive discovery before Cook even knew that Taylor intended to rely on a qualified immunity defense, Taylor wholly failed to "*specifically* . . . pursue his MTCA affirmative defense," *Grimes*, 982 So. 2d at 370 (¶27) (emphasis added), by engaging in limited discovery focused on that defense. *Cf. Irwin-Giles v. Panola County*, 253 So. 3d 922, 925 (¶8) (Miss. Ct. App. 2018) (no waiver issue raised where the defendant county asserted a qualified immunity defense in its answer and then, "[a]fter limited discovery," filed a motion for summary judgment based upon that defense).

¶43. In deposing Cook, for example, Taylor questioned Cook about what injuries she received, any preexisting injuries she may have had, the damages she sought, and the claims she was bringing against Taylor. Taylor asserts that this broad discovery was necessary to determine if Cook was claiming that Taylor was acting in "reckless disregard" of her safety. *See* Miss. Code Ann. § 11-46-9(1)(c). We recognize that Cook alleged that Taylor was engaged in "[r]eckless driving" in violation of section 63-3-1201, which makes it an offense to drive "in such a manner as to indicate either a wilful or a wanton disregard for the safety

18

of persons or property." Taylor, however, offers *no* explanation why Cook's deposition was necessary in order for him to raise a qualified immunity defense *in his answer*. Further, if Taylor felt it was necessary to explore the "reckless disregard" issue in discovery before moving for summary judgment based upon his qualified immunity defense under the MTCA, Taylor offers no reasonable explanation why he did not engage in limited discovery to specifically address this issue, or even why, after Cook's deposition, he waited seven more months to file his summary judgment motion.

¶44. Taylor's lawyer also questioned Cook in her deposition about her standing in the community and the people she knew in the community, explaining that he was doing so to assist Taylor in jury selection in Quitman County. Under the MTCA, however, a case is tried before a judge, without a jury. Miss. Code Ann. § 11-46-13(1). And following the parties' depositions, Taylor subpoenaed Cook's cell phone records. Taylor offers no explanation why these records would be pertinent to his qualified immunity defense.

¶45. Having initiated and fully participated in unlimited discovery without Cook knowing that Taylor intended to pursue a qualified immunity defense, Taylor's lawyer emailed Cook's lawyer in late November 2018—over eight months from the time he filed his answer—requesting that Cook voluntarily dismiss her lawsuit against Taylor based upon his qualified immunity under the MTCA. Taylor's lawyer furnished Cook's lawyer with the applicable statutes under the MTCA and the information he had gathered to prove this defense.[2] Taylor-

---

[2] This documentation included (i) a letter from the Commissioner of Insurance recognizing that the Marks VFD qualifies for the protections of the MTCA; (ii) the fire-

offers no explanation for why he did not bring his qualified immunity affirmative defense issue before the circuit court at this time, rather than informally raising this new affirmative defense in an email to Cook's counsel.

¶46.    And if this delay were not enough, Taylor delayed six more months before asserting his qualified immunity defense in his motion for summary judgment, while continuing to participate in the litigation in ways that objectively appeared that he intended to try the lawsuit.  In particular, after Cook did not voluntarily dismiss her lawsuit, Taylor filed a notice that he intended to use the fire-services contracts "at the trial of this matter," subpoenaed the Quitman County Sheriff Department and the Mississippi Highway Patrol for call logs and dispatch recordings from the day of the accident, and returned the draft pretrial order to Cook's lawyer with the defendant's portions completed.  Although the draft pretrial order provided that "Defendant's Motion for Summary Judgment" was pending, it had yet to be filed.  On its face, the draft pretrial order demonstrated that the case was ready to be tried. It detailed the contested and uncontested questions of fact and law, the exhibits to be used at trial (with objections), the demonstrative evidence to be used at trial, and the witnesses to be called at trial and their areas of testimony.

¶47.    Over a month after the parties essentially completed the pretrial order, Taylor filed his summary judgment motion—fourteen months from the time he filed his answer in this

---

services contracts that Quitman County entered into with the Marks VFD both before and after the date of the accident; and (iii) documentation from the Mississippi Secretary of State's office showing that Marks VFD was a non-profit corporation in good standing.

lawsuit. Nearly a month after that, Taylor moved to amend his answer to assert a qualified immunity defense. In *Horton*, even when the defendants raised the applicable affirmative defense in their answer (which Taylor failed to do in this case), the supreme court found "that—absent extreme and unusual circumstances—an eight month unjustified delay in the assertion and pursuit of any affirmative defense or other right which, if timely pursued, could serve to terminate the litigation, coupled with active participation in the litigation process, constitutes waiver as a matter of law." *Horton*, 926 So. 2d at 181 (¶45). We find no "extreme and unusual circumstances" excusing Taylor's delay in this case.

¶48. In sum, based upon the circumstances we have discussed above, we find Taylor's fourteen-month delay in asserting his qualified immunity defense before the circuit court was unjustified and constitutes a waiver of this defense as a matter of law.[3] Taylor failed to

---

[3] We recognize that in some cases the supreme court has found that a defendant has shown a reasonable basis for a delay in seeking summary judgment on an affirmative defense where discovery was necessary before doing so. These cases are distinguishable here. In *Hinton v. Sportsman's Guide Inc.*, 285 So. 3d 142 (Miss. 2019), for example, the supreme court found that the defendant did not waive its "innocent seller" defense where the defendant raised this defense in its answers to plaintiffs' complaint and amended complaints, *id.* at 150 (¶¶16, 19), and the defendant's summary judgment motion was filed after the completion of discovery concerning that defense by the date set for dispositive motions in the scheduling order entered in the case. *Id.* at (¶19). As another example, in *Doe v. Rankin County School District*, 189 So. 3d 616, 620 (¶14) (Miss. 2015), after granting a petition for writ of certiorari, the supreme court found that the school district did not waive its MTCA discretionary-function immunity defense. The Court of Appeals opinion indicated that the school district raised this affirmative defense in its answer, *see Doe o/b/o Doe v. Rankin Cnty. Sch. Dist.*, No. 2012-CA-01163-COA, 2013 WL 12441114, at *4 (¶21) (Miss. Ct. App. Dec. 10, 2013), *rev'd*, 189 So. 3d 616 (Miss. 2015); further, "the [supreme court's] rules for determining discretionary-function immunity . . . changed greatly during the pendency of [the] litigation," *Doe*, 189 So. 3d at 620 (¶13), and the "case necessitated thorough discovery

comply with Mississippi Rule of Civil Procedure 8(c) when he did not plead a qualified immunity defense in his answer. Taylor then initiated discovery and, for over seven months, the parties engaged in substantial discovery that took place without Cook having "fair notice" that Taylor intended to pursue a qualified immunity defense, *Latham*, 262 So. 3d at 582 (¶73), and without Taylor limiting his participation to only those actions necessary to "specifically pursue his MTCA defense." *Grimes*, 982 So. 2d at 370 (¶27). After eight months, Taylor's lawyer informally sought voluntarily dismissal of Cook's lawsuit on qualified immunity grounds via an email to her lawyer. When Cook rejected that suggestion, Taylor still did not move for summary judgment on this basis for six more months, while continuing to participate in the litigation that objectively appeared as if he were preparing for trial. These circumstances do not support a "reasonable explanation" accounting for Taylor's fourteen-month delay in asserting a qualified immunity affirmative defense.

---

of a sensitive nature, which [the school district] took reasonable time to conduct." *Id.* at (¶14).

In this case, although limited discovery may have been necessary before Taylor was able to move for summary judgment on his MTCA qualified immunity defense, this was no justification for his delay in ever asserting this affirmative defense before the circuit court until fourteen months into the litigation process. As we have discussed in detail above, Taylor knew the basic facts supporting his MTCA qualified immunity affirmative defense since the inception of the lawsuit, but he never asserted it in his answer or in the following eight months in which nearly all the discovery that took place in this case occurred. Cook was without "fair notice" of Taylor's intent to rely on an MTCA qualified immunity defense during this entire time. *Latham*, 262 So. 3d at 582 (¶73). Even after Taylor informally told Cook that he intended to pursue a qualified immunity defense, Taylor continued to participate in litigation for six more months before finally asserting this defense to the circuit court in his summary judgment motion. We find no justification for Taylor's delay under these circumstances that are wholly distinguishable from those in *Hinton* and *Doe*.

22

¶49. For the reasons stated, we therefore find that the circuit court abused its discretion by implicitly allowing Taylor to amend his answer when it proceeded to grant Taylor's motion for summary judgment based upon a qualified immunity defense. We further find that Taylor waived his qualified immunity affirmative defense as a matter of law. Accordingly, the circuit court's judgment is reversed, and this case is remanded for further proceedings on Cook's negligence and negligence per se complaint against Taylor.

## IV. Remand to the Circuit Court for a Decision on Taylor's Motion to Amend Answer

¶50. Taylor asserts in the alternative that this Court "should not hold that [Taylor] has waived the right to assert a qualified immunity defense. Instead, he argues this matter should be remanded to the circuit court for a ruling on [Taylor's] [m]otion to [a]mend [his] [a]nswer." Taylor asserts that "leave to amend 'shall be freely given when justice so requires,' [M.R.C.P. 15(a)], and justice would certainly require it [here]." We find no merit in this argument. We have already determined above that the circuit court abused its discretion by implicitly granting Taylor's motion to amend his answer to raise a qualified immunity affirmative defense when it granted summary judgment in his favor on this basis and that Taylor waived this affirmative defense as a matter of law.

¶51. In making this determination in this manner, we have followed the supreme court's mandate in *Hutzel* that "when reviewing a trial court's decision to grant . . . a party's request to amend pleadings pursuant to Rule 15 *over an objection grounded in Rule 8(c)*, this Court will adhere to the rule expressed in *Horton*, giving full effect to the mandatory language of

23

Rule 8(c)." *Hutzel*, 33 So. 3d at 1122 (¶24) (emphasis added). We have likewise promoted the "judicial efficiency and the expeditious resolution of disputes" espoused by the supreme court in *Hutzel*. *Id.* In short, Taylor waived his qualified immunity affirmative defense. The circuit court's judgment is reversed and remanded for further proceedings on Cook's negligence and negligence per se complaint against Taylor.

¶52. **REVERSED AND REMANDED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR. McDONALD, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**